**IDEAL FARMS DRAINAGE DISTRICT,** a public corporation of the State of Florida, and **L. D. Oxford,** as Receiver of said District, v. **CERTAIN LANDS IN SAID DISTRICT** against which taxes have been assessed and **MAURICE MOUNTZ,** joined by her husband, **L. J. MOUNTZ,** as the owners of said lands.

19 So. (2nd) 234
May 9, 1944
On Petition for Rehearing August 1, 1944
Rehearing Denied September 15, 1944

June Term, 1944
Division A

*H. E. Oxford* and *Erle B. Askew,* for petitioners.
*Shackleford, Farrior & Shannon,* for respondents.

ADAMS, J.:

The petitioner, a drainage district formed, pursuant to the general drainage law of Florida, (Sec. 298.01 et seq. F. S. '41) filed a bill to foreclose a lien for drainage taxes. Among other defenses interposed is the three year statute of limitations (Sec. 95.11 FSA) upon the theory that the tax is a liability created by statute. The lower court held the defense good and that ruling is before us under Rule 34 of this Court.

The petitioner insists the lower court was in error because; 1. No statute of limitations runs against the right of the sovereign to collect its taxes unless expressly made so; 2. The statute under which the taxes were levied provides that the same shall constitute a lien from the date of assessment until paid, thereby making the tax a perpetual lien until paid;

and 3. The policy, established by the Legislature and the decisions of this Court over a long period of time, with reference to the imposition and collection of taxes, renders inapplicable the provisions of the general statute of limitations to actions brought to enforce the payment of taxes.

In People v. Hulbert, 71 Cal. 72, 12 Pac. 43, the Supreme Court of California held that a swamp land assessment imposed by the State Legislature was a liability created by statute. For purposes material to this case the California statute, under which the drainage liability was imposed, is not dissimilar to ours. The California Court held the foreclosure of city taxes was barred under the same statute. Dranga v. Rowe, 127 Cal. 506, 59 Pac. 944. The authorities generally hold that where the Legislature delegates power to reclaim or improve lands and assess the cost thereof the assessments are obligations imposed by law. Board of Commissioners v. Story, 26 Montana 517, 69 Pac. 56; Lemhi County v. Boise Live Stock Loan Co., 47 Idaho 712, 278 Pac. 214; Town of Morganton v. Avery, 1189 N. C. 551, 103 S. E. 138; Drainage District No. 1 v. Bates County, ...... Missouri ......, 216 S.W. 949; Bristol v. Washington County, 177 U. S. 133, 20 Sp. Ct. 585, 44 L. Ed. 701.

The law is also generally settled that a statute of limitations will run against a political subdivision. See 34 Am. Jur. Limitation of Action, Sec. 395; City of Los Angeles v. Los Angeles County, 9 Cal. (2nd) 624, 72 Pac. (2nd) 138, 113 A.L.R. 370; and notes following in A.L.R.; Metropolitan R. R. Co. v. District of Columbia, 132 U. S. 1, 10 Sp. Ct. 19, 33 L. Ed. 231; Rosedale School District No. 5 v. Towner County, 56 N. D. 41, 216 N. W. 212.

The Legislature of this State, by Sec. 95.02, F.S. '41, provided that the general statute of limitations would not apply to:

. . . any action by this State, or by any officer or persons in behalf of this State, or to any action by or on behalf of the trustees of the internal improvement fund, or the seminary or school fund, or the board of education of the State, or any county or municipal corporation, or school district within this State, or with respect to any moneys or property held or collected by any officer or trustee or his sureties."

An exception in the application of a statute to certain cases amounts to an affirmation of its application to cases not mentioned. In re: Estate of Art Ratliff, 137 Fla. 229, 188 So. 128; 25 R.C.L. 983, Sec. 230.

It cannot be said that the drainage district is a municipal corporation because it possesses no general power of sovereignty to levy and collect taxes. It is a quasi public corporation. It makes the assessments and they become binding liens on the property yet they are not levied for governmental purposes. The levy of assessments is for special improvements to the reclaimed area. The district has power to issue bonds to finance the reclamation plan, however, the bond holder may proceed directly to enforce payment of his bonds in the event the supervisors fail, neglect or refuse to enforce payment on the assessed benefits within ninety days after they become delinquent. Sec. 298.45, F.S. '41.

We find the ruling of the circuit court free from error and the order is affirmed and certiorari is denied.

So ordered.

BUFORD, C. J., TERRELL, CHAPMAN and ADAMS, JJ., concur.

ON PETITION FOR REHEARING

ADAMS, J.:

The Ideal Farms Drainage District, comprising several thousand acres situated in Polk and Hillsborough counties, Florida, was 'established by a decree of the Circuit Court of Polk County, Florida, on December 3, 1923, under the several provisions of Chapter 6458, Acts of 1913, Laws of Florida, Sections 298.01 to 298.72, Fla. Stats. 1941 (F.S.A.). The boundaries of this Drainage District were expanded by decrees of the court from time to time as authorized by statute, so as to embrace greater areas. One of the court decrees was dated May 2, 1924, and another on October 13, 1926. While the District is located in the aforesaid counties, only such lands of the District as are situated in Hillsborough County are involved in this suit.

The Board of Supervisors of the District levied maintenance taxes from year to year and installment taxes against

the lands of the District. These levies were by Board, annually, certified to the tax collector of Hillsborough County, Florida, for collections, but none have been paid and the same are now delinquent for the years beginning with the year 1925 to and inclusive of the year 1939 on the lands accurately described for the amounts and year appearing in the bill of complaint.

The District issued and sold bonds and raised money which it is contended was used for the purpose of promoting the drainage program of the district. The benefits accruing to the lands from the drainage program are alleged to approximate a value of $1,000,000.00. On October 28, 1942, a suit was filed in the Circuit Court of Hillsborough County, Florida, for the purpose of enforcing the payment of the delinquent drainage taxes on the lands situated in Hillsborough County, Florida.

The chancellor below held that Division (a) of Sub Section 5 of Section 95.11, Fla. Stats. 1941, was applicable to delinquent drainage taxes. The Section supra, provides that an action upon a liability created by statute other than a forfeiture must be brought within *three years*. The answer as sustained is viz:

"Eleventh: These defendants allege that no drainage taxes have ever been paid in in the District on lands owned by Maurice Mountz, although the District is purported to have been created for twenty years; that no action has heretofore been brought, or is now pending, save these proceedings on behalf of the drainage district, or on behalf of its bond holders, to enforce the payment of any such taxes; that Section 4647, Compiled General Laws of Florida, 1927, Section 95.02, Florida Statutes, 1941, exempt certain causes of action from the operation of the limitations defined in Chapter, or Title, where said Section is found, including 'any action by this State . . . , or any county or municipal corporation, or a school district,' but no mention is made of any other sort of taxing district, besides a school district; that as to parties and public entities not mentioned in said Section 4647, C.G.L. 1927, Section 95.02, Florida Statutes 1941, the limitations defined by Chapter 26, Comp. Gen. Laws, Sections 4646 to

4665, inclusive, apply; that a drainage district organized under the general drainage law is not a municipal corporation within the meaning of the Constitution, or statutes of Florida; that in consequence Section 4663, par. 5, Clause 1, Comp. Gen. Stats., Section 95.10, sub-section 5, Fla. Stats. 1941, applies to causes of action in favor of the Drainage District, or its bond holders, which constitutes a cause of action 'upon a liability created by statute, other than a penalty or forfeiture,' and is barred by the three year limitations provided in that section for the reason that a special assessment for drainage purposes is 'a liability created by statute;' that the bond holders may, in the event the Supervisors fail to act for a period of ninety days, institute a suit on their own behalf to collect delinquent taxes, pursuant to Section 1473, Comp. Gen. Laws, Section 298.45, Fla. Stats. 1941, or if any coupons go on default they have another remedy under Section 1493, Comp. Gen. Laws. Section 298.51, Fla. Stats. 1941, but no such action has been instituted, or is now pending, save these foreclosure proceedings and save the alleged appointment of L. D. Oxford, one of the plaintiffs herein, as Receiver of said alleged District, as alleged in the Bill of Complaint herein, and which allegation is without knowledge of these defendants, and if the said L. D. Oxford is duly qualified and acting Receiver for said Drainage District, then his appointment was pursuant to some action, or suit, filed very recently and immediately preceding the filing of these foreclosure proceedings; that all levies, or purported levies, on account of the alleged bond issue are long since barred by the three year statute of limitations; that the present bond holders, as hereinabove alleged purchased the bonds at the nominal figure of 17½ cents on the dollar, long after said bonds were in default and with knowledge, actual or constructive, of the matters hereinabove alleged; these defendants are entitled to a decree, declaratory, or otherwise, adjudging the lands of Maurice Mountz by operation of the statutes of limitations, free and clear of any claim for the total tax levies and for the instalment tax levies and maintenance taxes made on account of said bond issues."

Section 298.36, Fla. Stats. 1941 (F.S.A.), authorizes the

Board of Supervisors of a drainage district established under Chapter 6458, *supra,* to levy a tax on such portions of said benefits, on all lands within the district to which benefits have been assessed, in amount as may be necessary, as determined by the Board of Supervisors to pay the costs of the completion of the proposed works and improvements, as disclosed by the plans of reclamation, and in carrying out the objects of the drainage district.

Section 298.54 grants the Board of Supervisors of a drainage district the power to levy a maintenance tax upon the completion of the improvements, in whole or in part, and, on or before the first day of October of each year thereafter, levy a tax upon each tract or parcel of land within the district to be known as a maintenance tax. The maintenance tax shall be apportioned upon the basis of the net assessments of benefits assessed as accruing from the original construction and shall not exceed ten per cent thereof in any one year and the same shall be certified to the county tax collector for collection.

The drainage tax as levied under the provisions of Section 298.36, *supra,* likewise shall be certified to the tax collector of each county in which the lands of any drainage district are situated for collection. Detailed duties of the said tax collector with reference to the collection thereof are prescribed by Section 298.38. Section 298.39 provides that all drainage tax levied under Chapter 6458 remaining unpaid after the first Monday in April of each year shall become delinquent and shall bear interest thereafter at the rate of 2% per month until paid.

Section 298.41, supra, in part, provides:

"298.41. Taxes and Costs a Lien on Land Against Which Taxes Levied; Sub-drainage Districts; Form of Certificate Asserting Lien.—All drainage taxes provided for in this chapter, together with all penalties for default in payment of the same, all costs in collecting the same, including a reasonable attorney's fee fixed by the court and taxed as costs in the action brought to enforce payment, shall from the date of assessment thereof until paid, constitute a lien of equal dignity with the liens for state and county taxes, upon all the

lands against which such taxes shall be levied as is provided in this chapter; . . ."

The case of Pinellas Park Drainage Dist. v. Kessler, 69 Fla. 558, 68 So. 668, involved the constitutionality of some of the provisions of Chapter 6458, *supra*. It was contended that the Legislature was without authority under Section 5 of Article IX of the Florida Constitution to confer taxing powers on a Board of Supervisors of a drainage district as attempted by the Act. The contention was denied and, in part, we said (text 69 Fla. 563-4) :

"The lawmaking power of the Legislature of a State is subject only to the limitations provided in the State and Federal Constitutions; and no duly enacted statute should be judicially declared to be inoperative on the ground that it violates organic law, unless it clearly appears beyond all reasonable doubt that under any rational view that may be taken of the statute, it is in positive conflict with some identified or designated provision of constitutional law. City of Jacksonville v. Bowden, 67 Fla. 181, 64 South. Rep. 769.

"The section of the Constitution above quoted relates to taxes imposed for State, County and municipal purposes, and does not apply to special assessments based upon benefits to property resulting from local improvements. See Anderson v. City of Ocala, 67 Fla. 204, 64 South. Rep. 775. There is no provision of the Constitution requiring special assessments for local benefits by drainage operations, to be levied by the county commissioners; and it is within the power of the Legislature to authorize such special assessments to be made by the Board of Supervisors of an incorporated drainage district as is done by Chapter 6458, Acts of 1913. See Mound City Land & Stock Co. v. Miller, 170 Mo. 240, 70 S. W. Rep. 721, 60 L.R.A. 190; 4 Dillon Mun. Corp. Sec. 1430, et seq." See Greene v. Uniacke, 46 Fed. (2nd) 916, 920, certiorari denied in 283 U. S. 847, 51 S. Ct. 493, 75 L. Ed. 1455.

The Constitution of Florida makes no express provision as to special assessments, nor is there any express provision in our Constitution as to the formation of taxing districts for particular purposes. If it appears that a statute does not violate the Federal or State Constitutions, then the legislative

will is supreme and the duty of the court is to effectuate the policy of the law as expressed in valid statutes. See Lainhart v. Catts, 73 Fla. 735, 75 So. 47.

Thus we observe that it is within the legislative power of a sovereign state, independently of constitutional authorization, by an appropriate enactment to authorize or require local improvements or reclamation essential to the promotion of the public health, necessity or general welfare, and to accomplish these ends, may provide for the construction of canals or drains for the drainage of swamps, marshes and overflowed lands or areas. The terms of such an Act can or may be made applicable to large or small areas or tracts of overflowed lands and may contain a program or method of financing the necessary and incidental costs of the improvements which by the Act is made a lien upon the benefitted lands. The courts, in ascertaining the intention and will of the Legislature in construing or interpreting these laws, must look for guidance to the statutes creating the drainage district or under which the drainage district is created by court decree and other pertinent statutes.

Posed for adjudication on this record is the question: Is the foreclosure of the delinquent drainage tax assessments, more than three years old, an action upon a liability, other than a penalty of forfeiture and barred if not brought within three years under Division (a), Sub-section (5) of Section 95.11, Fla. Stats. 1941 (F.S.A.)? The trial court held in the affirmative and the order is here for review on petition for interlocutory certiorari.

It was the view of the lower court that the foreclosure action in the case at bar by the Ideal Farms Drainage District on its delinquent drainage taxes was an action upon a liability created by statute, other than a penalty or forfeiture within the meaning of Division (a) of Subdivision 5 of Section 95.11, Fla. Stats. 1941 (F.S.A.), and therefore barred by the three year statute of limitations; that the foreclosure action by the drainage district of its delinquent drainage taxes was not one of the exceptions enumerated by Section 95.02, Fla. Stats. 1941 (F.S.A.), which provides:

"95.02. Actions Not Affected by Limitations.—This Chap-

ter shall not apply to any action by this State, or by any officer or persons in behalf of this State, or to any action by or on behalf of the trustees of the internal improvement fund, or the seminary or school fund, or the board of education of the State, or any county or municipal corporation, or school district within this State, or with respect to any moneys or property held or collected by any officer or trustee or his sureties."

The above quoted section enumerates actions that shall *not* be affected by the statute of limitations and are viz: (1) actions by the State (of Florida); actions by the Trustees of the Internal Improvement Fund; (3) actions involving the seminary or school fund; (4) actions by the Board of Education; (5) actions by any County; (6) actions by municipal corporations; and (7) actions by any school districts. We have, from time to time, considered and construed certain provisions of Section 95.02, *supra*. See Hayes v. Belleair Development Co.; 120 Fla. 326, 162 So. 698; Walker v. Landress, 111 Fla. 356, 149 So. 545; City of Port Tampa v. County of Hillsborough, 102 Fla. 968, 136 So. 723; Southern Drainage District v. State of Florida, 93 Fla. 672, 112 So. 561; Browder v. Da Costa, 91 Fla. 1, 109 So. 448.

Section 298.41, *supra,* provides that all drainage taxes provided for by this Chapter (6458) "shall from the date of assessment thereof until paid, constitute a lien of equal dignity with the liens for state and county taxes upon all the land against which such taxes shall be levied as is provided in this Chapter." Likewise, penalties for the non payment of the drainage taxes incurred in an action to enforce payment such as costs of suit and attorneys' fees (where the action has been instituted), shall constitute a lien until paid.

It is true, as emphasized by counsel for the appellees, that the *action* to enforce the payment of delinquent drainage taxes made a lien by a statute, was not specifically enumerated by the several provisions of Section 95.02, *supra*. We are requested to sustain the holding of the lower court by applying to the cited statute the well recognized rule of statutory construction, "*expressio* unius est exclusio alterius"— meaning that where a statute enumerates the things upon

which it is to operate, or forbids certain things, it is to be construed as excluding from its operation all those not expressly mentioned. Numerous authorities, largely from other jurisdictions, are cited to sustain this construction.

If we conclude, as requested, that delinquent drainage taxes, made a lien by Chapter 6458 "from date of assessments until paid," is barred by the three years provision of Division (a) of Subsection (5) of Section 95.11, *supra,* then the two statutes are in conflict and repugnant to each other in that one holds that actions on such liens must be brought in three years, while the other statute holds that the liens shall exist "from the date of assessment until paid." See Section 298.41, *supra,* We are committed to the rule that if the courts can by any fair, strict or liberal construction find for the conflicting provisions a reasonable field of operation which may preserve the force and effect of each statute and cause the same to harmonize, it is their duty so to do. See Arnold v. State ex rel. Mallison, 147 Fla. 324, 2 So. (2nd) 874; American Bakeries Co. v. City of Haines City, 131 Fla. 790, 180 So. 524.

In construing statutes courts are required to look to the conditions of the country to be affected by an Act, as well as the purpose declared, so as to ascertain the intention of the Legislature, and will read all parts of the Act together. See Amos v. Conkling, 99 Fla. 206, 126 So. 283. Courts are required to construe statutes as they find them. The history, object and purpose of the Legislature, with the mischief to be remedied, may be considered in examining into the intention of the Legislature. See Blount v. State, 102 Fla. 1100, 138 So. 2, 80 A.L.R. 830. Laws affecting the public policy of a State or the general welfare should receive a liberal construction. See Arnold Lumber Corp. v. Richardson, 105 Fla. 204, 141 So. 133. Where two legislative Acts are repugnant to or in conflict with each other, the one last passed, being the latest expression of the Legislature, usually must control. See Routh v. Richards, 103 Fla. 752, 138 So. 69.

Section 95.02 and Subsection 5 of Section 95.11 were enacted as parts of Chapter 1869, Laws of Florida, Acts of 1872. These statutes were in force and effect when Chapter 6458, Laws of Fla. Acts of 1913, was enacted. It cannot be

said that the Legislature intended to enact contradictory or repugnant legislation. See Simpson v. State, 94 Fla. 789, 114 So. 542. Separate fields of operation can or may be given the two Acts, and in so doing apparent conflicts therein immediately disappear.

In the enactment of Chapter 6458, the Legislature provided for the organization of drainage districts for the purpose of reclaiming or draining swamp and overflowed lands for sanitary and agricultural purposes in behalf of the health, convenience and the general welfare. The Act defined the powers, duties, privileges and liabilities of drainage districts. It authorized the levy of taxes against the property of the district to finance the costs of the improvements; it has the power to issue from time to time to finance the costs of improvements; the improvements are taxed to pay the bonds, with interest, and a general maintenance tax levied from year to year.

The case at bar was brought in the lower court to enforce the payment of delinquent drainage taxes. These taxes, under the provisions of Section 298.41, were made liens upon all lands of the drainage district against which they were levied, "from date of assessment thereof until paid." Land owners of the district could pay the taxes when due, or if they failed so to do, then the taxes became delinquent by operation of law because liens upon the lands against which they were assessed, not for *three years,* as held in the lower court, but "from date of assessment thereof until paid." If the will and intent of the Legislature, as expressed in Chapter 6458, *supra,* is effectuated, recognized and observed by this Court, which it is our duty so to do, the conclusion is irresistible to the effect that Sections 95.02 and Division (a) of Subsection 5 of Section 95.11 are without influence upon and wholly inapplicable to the subject of this controversy.

It is our conclusion that the petition for rehearing in this cause is well founded, and that our prior opinion, order and judgment herein dated May 9, 1944, is set aside, receded from and held for naught. The new and controlling opinion, order and judgment in this cause is that the petition for certiorari as prayed for be granted in part and that portion of the

order of the lower court dated January 29, 1944, sustaining paragraph Eleven of the amended answer be and the same is hereby quashed. All other grounds of the petition for interlocutory certiorari are denied.

It is so ordered.

BUFORD, C. J., TERRELL and CHAPMAN, JJ., concur.