Suit by Ellen Palmquist, a single woman against Ivan H. Johnson and wife and John L. Patten, for cancellation of two tax deeds wherein John L. Patten filed a counterclaim. From a decree dismissing the bill of complaint, the plaintiff appeals.
Decree reversed with directions.
It appears by the record in this cause that Christine Palmquist and husband, C.V. Palmquist, in 1902 or 1903, acquired title to some thirty-five acres of described farm land located near the Town of Hallendale, Dade County, Florida. They went into the possession of the land in 1909 or 1910 and annually grew crops of tomatoes, peppers, strawberries and vegetables. Some seven or eight months of the year were required to produce these crops. The land would be prepared in September or October and plants transplanted in December or early January — then cultivated — and the shipping season would end in April and May. The land then would remain idle until the following September or October. These crops were grown each year by the Palmquist family from 1910 until the year 1946.
Honorable E.B. Leatherman, Clerk of the Circuit Court of Dade County, Florida, on April 9, 1937, issued to Ivan H. Johnson and Ingeborg S. Johnson a tax deed to five acres of the described land, being a part of the 35 acres supra. Likewise, on April 9, 1937, a tax deed to ten acres (being a part of the 35 acres supra) was issued to *Page 314 
Ivan H. Johnson and Ingeborg S. Johnson. The two deeds were recorded among the public records of Dade County, Florida. Christine Palmquist died on May 14, 1941. She was the mother of six children, one of whom is the appellant, Ellen Palmquist. We held that Ellen Palmquist had a right under Section 733.02, F.S.A., to maintain this suit. See Palmquist v. Johnson, 155 Fla. 628, 21 So.2d 353. The taxes annually levied against the property were paid by the appellees from the year 1937 to 1946, inclusive, and were not paid by the appellant.
The appellant, Ellen Palmquist, on June 1, 1944, filed an amendment to her bill of complaint against Ivan H. Johnson and wife, Ingeborg S. Johnson and alleged that the Johnsons, since obtaining the two tax deeds, have not been in the possession of the two tracts of land described in the deed, nor either of them, but that Palmquist family, or some member thereof, or some one holding under them, has been in the actual continuous, uninterrupted and adverse possession of the two tracts from 1937 until 1944 and have grown crops of peppers, tomatoes, strawberries and vegetables each year thereon between 1937 and 1944 and that Ivan H. Johnson had made threats that it was his intention to forcibly take possession of said land, although the four year period prescribed by Section 196.06, F.S.A., for obtaining possession or bringing proceedings to obtain possession under the two tax deeds had elapsed. The bill of complaint prays for a cancellation of the two tax deeds for various reasons.
The Johnsons, on May 19, 1945, answered the bill of complaint and alleged in paragraph one "that they were without knowledge as to each and every one of the allegations contained therein and required strict proof". Attached to the answer is a copy of a special warranty from the Johnsons to one John L. Patten conveying the land involved in this suit. It is suggested that John L. Patten be made a party defendant so that his right, title and interest as the owner of the property be forever quieted by a court decree in Patten. The answer does not allege that Johnson and wife nor Patten were in possession of the land or that proceedings had been instituted for the possession thereof within the four year period fixed by Section 196.06, F.S.A., from April, 1937, until the filing of the answer in May, 1945.
Pursuant to an order of court, John L. Patten was made a party defendant and on January 14, 1947, filed an answer to the bill of complaint and counter claim. The material allegations of the bill of complaint were denied by the answer and on the question of possession of the land he alleged: "and this defendant (Patten) avers that the said real property is not in the adverse, actual possession, occupancy and use of any person, nor was it in such adverse, actual possession, occupancy and use for the period of four years immediately subsequent to said date of April 9, 1937". The counter claim and answer of Patten pray for a decree quieting the title to the two tracts in him.
The cause was referred to a Special Master, with directions to take testimony on the issues made by the pleadings. After hearing the testimony the Special Master filed his report in which he discussed the evidence and law applicable to the controversy, and made recommendations that the Chancellor enter a final decree quieting the title in the Johnsons and Patten and that the plaintiff's bill of complaint be dismissed. Exceptions to the report were filed and by the Chancellor overruled and denied and a decree was entered as recommended by the Special Master. An appeal has been perfected here.
As the writer views the final decree, in light of the pleadings and all the testimony and exhibits certified here, confusion unquestionably existed not only as to the applicable law but as to the legal effect of the testimony bearing on the question of possession of the two tracts. The record discloses that the defendant Patten did not take the witness stand or give testimony in support of the material allegations of his answer and counter claim filed January 14, 1947. The possession of the two tracts by the defendants must rest exclusively on the testimony of Ivan H. Johnson and J.L. Wambaugh, as the other two witnesses of the defendants were employees of the Clerk's office.
The Chancellor overlooked the following recommendation of the Special Master on *Page 315 
the question of possession of the two tracts by members of the Palmquist family. It is viz.:
"A great deal of the voluminous testimony concerns the question as to whether or not the plaintiff and her mother, Christina Palmquist had `adverse actual possession, occupancy and use' of the land involved for the four year period immediately following the issuance of the tax deed on April 9, 1937. While there is some slight testimony to the contrary, the testimony overwhelmingly establishes the fact that members of the Palmquist family, sometimes E.V. Palmquist alone and sometimes E.V. Palmquist and E.W. Palmquist his brother, have farmed the major portion of the fifteen acre tract involved for many years commencing long prior to the issuance of the tax deeds and continuing to the present date. The farming operations were conducted in accordance with the custom prevailing in South Florida, in the winter season only, the summer being too hot and wet to make farming practicable. There are no buildings upon the property, but sometimes tools and equipment were allowed to remain on the property through the summer months while the land was not under cultivation."
The Special Master's conclusion that "the testimony overwhelmingly establishes the fact that the members of the Palmquist family * * * farmed the major portion of the 15 acre tract for many years, commencing long prior to the issuance of the tax deeds and continuing to the present date" (the Special Master's report was filed December 20, 1947) is fully sustained by the testimony of (1) Ellen Palmquist; (2) J.L. Blackmer; (3) E.V. Palmquist; (4) J.H. Starke; and (5) E.W. Palmquist. This possession consisted in the cultivation of the land and growing of crops annually thereon from October until the following April or May, which consumed some seven or eight months of each year. Their farming machinery and packing shed remained on the property throughout each year. The testimony for the defendants on this point as given by J.L. Wambaugh and Ivan Johnson is legally insufficient to affect or change the Special Master's conclusion. It is safe to conclude, in light of all the testimony, that the tax deed owners never acquired possession of the land or any part thereof as against the record title owners.
On the former appeal here we held that Ellen Palmquist had a right, under Section 733.02, F.S.A., to maintain this suit in equity to quiet title to the described lands. See Palmquist v. Johnson, supra. Section 196.06, F.S.A., provides that when a tax deed holder goes into the actual possession and occupancy of the land and continues for four years no suit shall be brought by the former owner * * * where the real estate is in adverse actual possession, the tax deed holder shall not be entitled to possession under the tax deed "unless suit for such recovery shall be brought within four years from the date of such tax deed." The two tax deeds here involved are dated April 9, 1937. The Johnsons, under Section 196.06, supra, had until April 9, 1941, to bring suit for the possession of the land described in the two tax deeds as against the record title owners.
Counsel for appellees contend that the appellant is not entitled on the record to the benefits and protection of the several provisions of Section 196.06, F.S.A., because of: (1) our ruling in Salls v. Martin, 156 Fla. 624, 24 So.2d 41; (2) Section 1 of Chapter 19253, Acts of 1939, Laws of Florida, Section 95.16, F.S.A., viz.:
"95.16. Real actions; adverse possession under color of title; requirements. — Whenever it shall appear that the occupant, or those under whom he claims, entered into possession of premises under claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree or judgment for seven years, the premises so included shall be deemed to have been held adversely; except that where the premises so included consist of a tract divided into lots, the possession of one lot shall not be deemed a possession of any other lot of the same tract; provided that during the period of seven years aforesaid the person so claiming adverse possession under color of title shall have within a year *Page 316 
after entering into possession made a return of said property by proper legal description to the assessor of the county wherein situated, and has subsequently paid all taxes theretofore or thereafter levied and assessed against the same and matured installments of special improvement liens theretofore or thereafter levied and assessed against the same by the state and county and by any city or town, if such property be situated within any incorporated city or town, before such taxes become delinquent."
It is conceded that Sections 95.16, 95.17 and 95.21, supra, were amended by Chapter 22897, Acts of 1945, Laws of Florida and a new Section added, viz.: Section 95.27. It was not the intention of the Legislature, in the enactment of Chapter 19253, Acts of 1939, Sections 95.16, 95.17 and 95.21, supra, and the subsequent amendment thereof by the enactment of Chapter 22897, Acts of 1945, to repeal by implication or otherwise Section 196.06, F.S.A., which prescribed a limitation of four years for a tax deed holder to recover or bring suit to recover possession of the real estate described in the tax deed. It is a duty of the court to find for apparently conflicting statutes a reasonable field of operation which may preserve the force and effect of each statute and cause them to harmonize, if possible, by a fair, strict or liberal construction thereof. Ideal Farms Drainage District v. Certain Lands, 154 Fla. 554, 19 So.2d 234.
Counsel for appellees contend that the payment by them of all taxes levied against the described property was legally sufficient to meet all requirements entitling them to a decree forever quieting title to the described lands against the claims and interest of the appellant and the Palmquist family. The contention is asserted in light of the fact that the appellant and those claiming through her have been in the open, actual, hostile, adverse and uninterrupted possession of the described land against all claims of the appellees continuously from 1936 through and inclusive of the year 1946. It is admitted that the appellees never brought suit to recover possession of the described lands as prescribed by Section 196.06, supra, within the four year period subsequent to April 9, 1937. The case of Salls v. Martin, 156 Fla. 624, 24 So. (2) 41, is relied upon to sustain their position.
The case of Salls v. Martin, supra, was a suit in ejectment. The Northern Investment Corporation acquired by purchase delinquent tax certificates against the real estate situated in Pinellas County, Florida, and foreclosed the certificates against the land in an equity suit in Pinellas County, in which all interested parties were made defendants, which suit resulted in a final decree dated March 13, 1937, and Master's sale of the described property, and J.W. Martin became the purchaser thereof and a Master's deed issued to him; and the Master's sale of the land and delivery of the deed to J.W. Martin were reported and confirmed by an order or decree of the Chancellor. J.W. Martin filed an ejectment suit, after acquiring a Master's deed, for recovery of possession of the property and made Salls and wife, Pearl J. Salls, defendants. Salls filed a plea to the effect that he went into possession of the land in May, 1937, and had been in open and adverse possession of the land under Section 196.06, F.S.A., for a period of four years prior to the date of filing the ejectment. It appeared on the face of the record that Salls claimed title under Hazel H. Dow and husband, Arthur L. Dow, each of whom were served with process and made parties defendant in the tax foreclosure suit. Salls never acquired, owned or possessed a tax deed to the property within the meaning of Section 196.06, supra, nor any other source of title, but simply went into possession of the property. Martin's title stemmed from the foreclosure proceeding supra. Salls had no defense to the ejectment suit and a judgment against him was proper. In affirming the judgment here for the appellee, Martin, it was not necessary to consider or rule upon the provisions of Section 196.06, and such comment thereon was a gratuity and must be treated as surplusage. See Peaden v. Estes, Fla., 36 So.2d 923.
Chapter 21822, Acts of 1943, Laws of Florida, Sections 66.26 and 66.27, F.S.A., authorizes grantees under tax deeds which have been acquired by the State, or any political division thereof, through any tax proceeding to maintain suits to quiet title to the land so acquired against the former *Page 317 
record owners. Section 2 of said Act, Section 66.27, F.S.A., outlines the procedure and method of quieting title. It in part provides: "Suits may be maintained hereunder whether or not the plaintiff is in possession of the lands involved, provided, however, that where the defendant is in actual possession of said lands a jury trial may be had as provided in the case of other suits to quiet title". The record in this suit discloses that the appellant was in possession of the land described in the tax deeds and the above statute provided for a jury trial, which was not had in the court below. If the provisions of Section 196.06, supra, are construed as being in para materia with the provisions of Chapter 21822, supra, then a tax deed owner would have four years to maintain a suit to quiet title as against the record owner.
For the errors committed the decree appealed from is reversed with directions for further proceedings not inconsistent with the views herein expressed.
TERRELL, THOMAS, BARNS and HOBSON, JJ., concur.
ADAMS, C.J., and SEBRING, J., dissent.