Mr. Charles D. Bailey, Jr. Attorney Sarasota-Manatee Airport Authority Post Office Box 3258 Sarasota, Florida 33578
Dear Mr. Bailey:
This is in response to your request for an opinion on substantially the following question:
 IS THE SARASOTA-MANATEE AIRPORT AUTHORITY AUTHORIZED BY LAW TO EXPEND PUBLIC FUNDS FOR ADVERTISING IN SUPPORT OF OR IN OPPOSITION TO ANY ISSUE INVOLVING THE INTERESTS OF THE AUTHORITY?
Chapter 77-651, Laws of Florida, the "Sarasota-Manatee Airport Authority Act," as amended by Ch. 78-620, Laws of Florida, created in s. 3 thereof "a body politic and corporate to be known as the `Sarasota-Manatee Airport Authority' for the purpose of acquiring, constructing, improving, financing, operating and maintaining airport facilities." See also, s. 13, Ch. 77-651, supra, preserving the force and effect, to the extent not in conflict therewith, of the provisions of Ch. 31263, Laws of Florida 1955, as amended, the predecessor enabling legislation for the Sarasota-Manatee Airport Authority. The powers of the Sarasota-Manatee Airport Authority are set forth in s. 4, Ch. 77-651, as amended. That section enumerates certain specific powers which may be exercised and further empowers the authority "[t]o do all acts and things necessary or convenient to carry out the powers granted by this act." My examination of s. 4, Ch. 77-651, does not reveal a specific power granted the Sarasota-Manatee Airport Authority to advertise in support of or in opposition to any issue involving the interests of the authority or to expend public funds therefor. See, Thayer v. State, 335 So.2d 815 (Fla. 1976); Ideal Farms Drainage District v. Certain Lands, 19 So.2d 234 (Fla. 1944) (statute enumerating certain things on which it is to operate ordinarily construed as excluding from its operation things not mentioned).
It is clear that a statutory entity such as the Sarasota-Manatee Airport Authority possesses only such power and authority as is expressly granted by law or necessarily implied therefrom in order to carry out an expressly granted power. See, Forbes Pioneer Boat Line v. Board of Commissioners of Everglades Drainage District,82 So. 346 (Fla. 1919); AGO's 86-90, 85-65, 84-40, 82-89, 76-200 and 73-374. Moreover, reasonable doubt as to the existence of a particular administrative power should be resolved against the exercise of such power. See, Edgerton v. International Company,89 So.2d 488 (Fla. 1956); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A.Fla., 1974), cert. denied, 300 So.2d 900 (Fla. 1974). In the absence of an express power conferred by law on the Sarasota-Manatee Airport Authority to expend public funds for advertising in support of or in opposition to issues involving the interests of the authority, and in the further absence of an express power to do any other thing from which it could be inferred that the authority possesses an implied power to expend public funds for such advertising, I am of the view that the Sarasota-Manatee Airport Authority is not authorized by law to expend public funds for advertising in support of or in opposition to any issue involving the interests of the authority. See, AGO's 85-4 and 77-8, concluding in pertinent part that authority granted a statutory entity to do all acts or things necessary, desirable or convenient or authority vested in a statutory entity "for the proper operation and improvement thereof . . ." does not operate to authorize such entity's exercise of the power to expend public funds for lobbying purposes in the absence of an express power conferred to make such expenditure. Cf., AGO 71-28 (officer seeking to expend state funds must find and point to statutory provision authorizing such expenditure).
You have directed my attention to previous opinions of this office which have addressed the authority of various governmental entities to expend public funds to advertise or to inform the public. As noted in your inquiry, AGO 65-106 concluded that a district school board was authorized to expend public funds to inform the public of current school programs but specifically concluded that a recommendation to the electorate to vote in a particular manner in a district millage election would be prohibited. Similarly, in AGO 72-320, this office concluded that public funds may not be used "to influence or take a partisan stance to gain public approval for the action taken by the school board" and stated that "[t]he test of whether it is appropriate to expend public funds in this area is whether the end product or result of such an expenditure is to inform the general public as opposed to influencing the general public." However, it should be noted that the conclusion in AGO 72-320 that public funds could be expended for informational purposes was based on specific statutory authority in s. 230.23(16), F.S. (1972 Supp.), for district school boards to adopt procedures for informing the public of educational programs, needs and objectives.
Similarly, in AGO 77-8, this office concluded that the Orange County Board of County Commissioners was not authorized to appropriate public funds for use for lobbying purposes by the Orange County Civic Facilities Authority because the authority, as a statutory entity with limited powers, was not authorized by its enabling legislation to expend such funds for lobbying purposes. See also, AGO 85-4 (public community colleges not authorized by law to expend college funds for lobbying activities).
Finally, your inquiry makes reference to AGO's 74-113, 74-227 and 78-41, concluding that a municipality may expend municipal funds in support of or in opposition to various issues which affect and involve the interests of the municipality and its citizens. These conclusions were based on the enactment of the Municipal Home Rule Powers Act, Ch. 166, F.S., implementing the provisions of s. 2(b), Art. VIII, State Const., which authorizes municipalities to "exercise any power for municipal purposes except as otherwise provided by law." And see, s. 166.021(1), F.S., providing in pertinent part that a municipality may exercise any power for municipal purposes "except when expressly prohibited by law." As noted in AGO 78-41, no statutory provision operates to preclude a municipality from expending municipal funds in support of or in opposition to issues which affect and involve the interests of the municipality and its citizens. The opinion further expressly contrasts the authority granted municipalities under home rule powers with prior AGO's 72-320 and 77-8, in which this office concluded that other statutory entities could not expend public funds for such purposes in the absence of express and specific statutory authorization. See also, AGO's 79-3, 74-28 and 73-443, concluding that various statutory entities established by special act were not municipalities, did not possess the general municipal government functions and powers, and were therefore not authorized to take action pursuant to Ch. 166, the Municipal Home Rule Powers Act, and that the act's provisions had no application to such statutory entities. Accordingly, I am unable to conclude that the views expressed in AGO's 74-113, 74-227 and 78-41 are applicable to the Sarasota-Manatee Airport Authority, since the authority is a statutory entity which does not possess general municipal government functions and powers, is not a municipality, and is not authorized to take action pursuant to Ch. 166.
In sum, and unless and until legislatively or judicially determined otherwise, it is my opinion that the Sarasota-Manatee Airport Authority is not authorized by law to expend public funds for advertising in support of or in opposition to any issue involving the interests of the authority.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General