Ms. Virginia B. Wetherell Secretary, Department of Environmental Protection Marjorie Stoneman Douglas Building 3900 Commonwealth Boulevard Tallahassee, Florida 32399-3000
Dear Secretary Wetherell:
You ask substantially the following questions:
1. Must the Department of Environmental Protection (DEP) obtain further legislative approval prior to commencing restoration of the Oklawaha River?
2. Must the Department of Environmental Protection obtain further authorization from the Board of Trustees of the Internal Improvement Trust Fund prior to commencing restoration of the Oklawaha River?
In sum:
1. The Legislature's approval in 1993 of the Greenways management plan, which included the option of restoring the Oklawaha River, does not require further legislative approval before restoration. Moreover, having been advised of the decision of the Department of Environmental Protection to restore the river, the Legislature took no action to alter the department's plan for implementation. Accordingly, the Department of Environmental Protection may proceed with the restoration of the river without further legislative approval.
2. The lease agreement between the Department of Environmental Protection and the Board of Trustees of the Internal Improvement Trust Fund authorizes the department to exercise control over canal lands in accordance with the management plan. Accordingly, the department is not required to obtain further authorization from the Board prior to commencing restoration of the Oklawaha River in accordance with the management plan.
Question One
In 1984, the Legislature directed the Department of Natural Resources to develop a management plan for the retention or disposal of canal lands and required the department to
operate and maintain existing [canal] lands and interests in lands, appurtenances, structures, and facilities until further disposition is directed by the Legislature pursuant to the management plan.[1]
Section 253.7829, Florida Statutes, was subsequently amended to require the submission of the management plan to the Governor and the Cabinet no later than two years after the deauthorization of the Cross Florida Barge Canal. As amended, it also required the plan's submission to the Governor and to specified legislative leaders. Subsection (3) of the statute required that the plan "shall not be implemented until state legislation specifically directing implementation of the submitted plan or a modified plan, as recommended, becomes effective."[2]
The Cross Florida Barge Canal was officially deauthorized in 1991.[3] The following year, the Legislature added the language below to section 253.7829(3), Florida Statutes:
The final disposition of the water control structures must be outlined in this management plan as adopted by the Legislature.[4]
A management plan outlining four options regarding the Greenways lands, including one which provided for the restoration of the Oklawaha River, was presented to the Governor and Cabinet. On December 15, 1992, the plan was accepted by the Governor and Cabinet and transmitted to the Legislature for approval with an amendment that recommended restoration of the natural functioning ecosystem in the lower Oklawaha River.[5]
In 1993, the Legislature enacted Chapter 93-213, Laws of Florida, which adopted and modified the management plan. The act acknowledges that the options contained in the management plan provide guidance in disposing of the canal works:
Because of the unique nature of the Greenways and the need to preserve flexibility in future strategies, the Legislature further intends that the management plan should be considered as providing guidance for management decisions. While the Legislature intends that a plan be considered to encompass the full range of management options, subject to available funding, it is not required that any specific recommendation contained within the plan be implemented unless specified in this act.[6]
Within Chapter 93-213, the Legislature specified that certain recommendations contained in the management plan be implemented while requiring that others be further studied before implementation.[7]
Within the legislation, the Legislature specifically addressed the disposition of the restoration of the Oklawaha River.
Section 54 of the act, codified as sections 253.7826(1) and (2), Florida Statutes, required that additional studies be conducted before final disposition of the Inglis Lock and Rodman Reservoir. While subsection (2) relating specifically to the Rodman Reservoir does not clearly specify who makes this final determination, an examination of subsection (1) indicates that with respect to the disposition of the Inglis Lock, the determination is to be made by the department after gathering the required information and submitting such information to the Governor and Cabinet (now the Board of Trustees of the Internal Improvement Trust Fund) and the Legislature.[8]
The two subsections are parallel provisions dealing with the disposition of canal structures by the department and should be read in tandem.[9] Reading the two subsections together results in the conclusion that a final determination on the disposition of the Inglis Lock and the Rodman Reservoir is to be made by the department after conducting the required studies and providing the results of such studies to the enumerated state officials.[10]
The requirement that the findings and recommendations be presented to various state officials does not alter such a conclusion. Such a requirement merely afforded the Governor and the Cabinet and the legislative leaders the opportunity to review the findings and proposals and voice any objections. The Inglis Lock study has been completed by DEP, and has already been implemented by DEP without further legislative authorization. Similarly, the Rodman Reservoir study was only a study and not a management plan and, therefore, is not subject to legislative approval as provided in section253.7829(6), Florida Statutes.
On January 27, 1995, the Secretary of DEP transmitted the study conducted by the St. Johns Water Management District pursuant to section 253.7826(2), Florida Statutes, to the Board of Trustees of the Internal Improvement Trust Fund, the President of the Senate, and Speaker of the House of Representatives. Secretary Wetherell, in her letter transmitting DEP's recommendation on restoration of the Oklawaha River, clearly stated that "absent the passage of legislative policy to the contrary, the Department will proceed with efforts to restore the Oklawaha River following the 1995 Legislative Session, by applying for the necessary permits."
In response, the Legislature during the 1995 legislative session, added a proviso to the General Appropriations Bill, which stated:
From funds provided in Specific Appropriations 1236, 1237, 1238, 1240, 1251A, the Department, in conjunction with the St. Johns Water Management District, shall continue to maintain the Rodman Dam and Pool in accordance with public safety requirements and best management practices until a final decision is rendered concerning the restoration of the Oklawaha River.[11]
Floor debate in the Florida House of Representatives interpreting this language indicates that the Legislature understood that a final decision had been made to restore the river and that the proviso merely directed the department to "use [this resource] in it's highest and best use until [DEP] move[s] forward with the permits."[12] The proviso language was held unconstitutional by the Supreme Court of Florida in Chiles v. Milligan.[13]
Thus, in 1993 the Legislature approved the management plan which included the option of restoring the Oklawaha River, requiring only that an additional study be conducted. The Legislature did not require further legislative approval before restoration and, having been advised of the department's decision to restore the river, took no action during the last legislative session to alter the department's plan for implementation. Accordingly, I am of the opinion that the Legislature has approved the restoration of the Oklawaha River and the Department of Environmental Protection may proceed without further legislative approval.
Question Two
The Board of Trustees of the Internal Improvement Trust Fund (Board) received title to the Cross Florida Barge Canal property from the United States pursuant to the Water Resources Act of 1990.[14] On October 27, 1993, the Board entered into a lease with DEP for management of the Greenways lands.
Under the lease, the department is required to implement best management practices for all activities conducted under the lease in compliance with the provisions of the management plan for the protection and enhancement of the leased premises.[15] Section 7 of the lease provides in part:
Within sixty (60) days of the effective date of this lease, the Office of Greenways Management, Department of Environmental Protection, shall file with the Bureau of Land Management Services, Division of State Lands, Department of Environmental Protection, a copy of the Cross Florida Greenways State Recreation and Conservation Area Management Plan published on August 30, 1992, and referenced in the Greenways Bill. The abovereferenced Management Plan, as amended from time to time, shall hereinafter be referred to as the "Management Plan." The leased premises shall not be developed or physically altered in any way other than what is necessary to implement the Management Plan. LESSEE shall not use or alter the leased premises except as provided for in the Management Plan.
As discussed in the previous question, the management plan was adopted by the Governor and the Cabinet in 1992 with one amendment directing that the Oklawaha River be restored. In 1993 the Legislature adopted the management plan but directed that an additional study be conducted prior to a final determination regarding restoration of the river. The Governor and the Cabinet, acting as the Board, subsequently entered into the lease with DEP which requires DEP to manage the property consistent with the management plan. One option of the plan which was specifically approved by the Governor and the Cabinet was the restoration of the natural functioning ecosystem in the lower Oklawaha River.
Moreover, the study conducted by DEP in accordance with the provisions of section 253.7826(2), Florida Statutes, was presented to the Governor and the Cabinet on January 17, 1995. As noted above, Secretary Wetherell, in her letter transmitting DEP's recommendation on restoration of the Oklawaha River, clearly stated that "absent the passage of legislative policy to the contrary, the Department will proceed with efforts to restore the Oklawaha River following the 1995 Legislative Session, by applying for the necessary permits." No action has been taken by the Board to redirect the efforts of DEP to restore the Oklawaha River.[16]
Thus, the terms of the lease agreement between the Department of Environmental Protection and the Board of Trustees of the Internal Improvement Trust Fund authorize the department to exercise control over canal lands in accordance with the management plan. Accordingly, I am of the opinion that the department is not required to obtain further authorization from the Board prior to commencing restoration of the Oklawaha River in accordance with the management plan.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] See, s. 6(2), Ch. 84-287, Laws of Florida.
[2] Section 253.7829(3), Fla. Stat. (1990). The Legislature directed the creation of the Canal Lands Advisory Committee (CLAC) to assist in the development of the management plan by the Canal Authority and the department. See, ss. 253.7829(1)(a) and (3) and253.783(2)(f), Fla. Stat. (1990).
[3] Section 402, Pub.L. No. 101-640; 16 U.S.C. § 460tt.
[4] See, Ch. 92-116, Laws of Florida.
[5] Transcript of the meeting of the Governor and Florida Cabinet, Tuesday, December 15, 1992, pp. 117-120.
[6] See, Part C, Final Bill Analysis and Economic Impact Statement on CS/CS/HB 1751, Committee on Natural Resources, dated May 5, 1993, stating that section 48 of the bill provides legislative intent for the creation of the Greenways and the use of the Greenways management plan. As further evidence that chapter 93-213, Laws of Florida, constituted acceptance of the management plan, see, s. 59, Ch. 93-213, Laws of Florida, deleting the provisions in s. 253.783 authorizing the creation of CLAC to assist in the preparation of the management plan; s. 58, Ch. 93-213, supra, deleting the requirement in s. 253.7829(1)(b), Fla. Stat. (1991), that the department operate and maintain canal structures "until further disposition is directed by the Legislature pursuant to the management plan." And see, Recommended Order, Berger v. Southern Hy-Power Corporation, Division of Administrative Hearings Case No. 95-3589 (January 12, 1996), stating that the Florida Legislature in Chapter 93-213, Laws of Florida ratified the Management Plan.
[7] See, e.g., s. 253.7824, Fla. Stat., authorizing the department to remove and sell products from canal properties; 253.7825, Fla. Stat., relating to recreational uses for canal properties;253.7827, Fla. Stat., allowing transportation and utility uses across canal properties.
[8] In 1994, the Legislature changed the references to the Governor and Cabinet to the Board of Trustees of the Internal Improvement Trust Fund. See, s. 85, Ch. 94-356, Laws of Florida.
[9] See, Staff analysis on CS/CS/HB 1751, supra, stating:
The bill also delays for 18 months a decision on whether to restore a free-flowing Oklawaha River. DNR can contract with the St. Johns River Water Management District for a study that reviews the environmental and economic impacts of restoring the Oklawaha River, retaining the Rodman Reservoir, or implementing a combination of these two alternatives. A similar study of the Inglis Locks at Lake Rousseau is required within the next 12 months.
[10] See, Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944); Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452 (Fla. 1992) (all parts of statute must be read together in order to achieve a consistent whole); State v. Haddock, 140 So.2d 631 (Fla. 1st DCA 1962).
[11] Line Item 1251A, Ch. 95-429, Laws of Florida, p. 3917.
[12] During the floor debate in the House of Representatives on the proviso language, Representative Mackey, in explaining the meaning of the proviso, stated that the language of the proviso "has no bearing whatsoever on the decision that the Department [of Environmental Protection] has already made [to restore the Oklawaha River]," and in no way impedes that decision. Representative Mackey stated that it had been recognized that it would take two or three years before all the necessary permits could be obtained to restore the river and that "during that time it just [is] a matter of not seeing the resource there deteriorate and to use it in it's highest and best use until they move forward with the permits." Transcript of Floor Debate, House of Representatives, May 11, 1995.
[13] Case No. 85,948 (July 28, 1995).
[14] Public L. 101-640, s. 402.
[15] Section 15 of Lease No. 4013.
[16] See, s. 22 of the lease stating that the lease shall only be amended with the prior written approval of LESSOR (the Board).