Mr. Samuel S. Goren City of Pembroke Pines Attorney 3099 East Commercial Boulevard Suite 200 Fort Lauderdale, Florida 33308
Dear Mr. Goren:
On behalf of the Pembroke Pines City Commission you have asked for my opinion on essentially the following questions:
1. May the City of Pembroke Pines enact an ordinance authorizing the city to monitor violations of traffic signals within the city?
2. If the answer to Question One is "yes," may the city use unmanned cameras to monitor intersections and document traffic violations?
3. If the answers to Questions One and Two are both "yes," may the city use the photographic evidence from the unmanned cameras to advise a car owner of a violation?
4. If the answers to Questions One and Two are "yes," may the city use its code enforcement special magistrate, and enforcement procedures provided in Chapter 162, Florida Statutes, to enforce violations of traffic signals?
5. If the answers to Questions One and Two are "yes," is the city authorized to install the unmanned cameras at intersections for state and/or county roads as long as all authorities with jurisdiction over such roads consent and use the photographic evidence in the same manner as the city for violations documented at intersections involving only city streets?
According to your letter, the City of Pembroke Pines seeks to enhance public safety within the city by attempting to reduce dangerous driving behavior relating to the failure to obey red light indications on traffic signal devices, a laudable goal. The city commission desires to enact an ordinance authorizing the city to monitor traffic signals within the city. The city would install unmanned cameras at intersections within the city to record vehicles that fail to stop for red lights. The photographic evidence from the unmanned cameras would be used to advise the vehicle's owner of the violation.
Questions One and Two
Chapter 316, Florida Statutes, is the "Florida Uniform Traffic Control Law." Section 316.002, Florida Statutes, expresses the legislative intent for adopting this law, stating:
"It is the legislative intent in the adoption of this chapter to make uniform traffic laws to apply throughout the state and its several counties and uniform traffic ordinances to apply in all municipalities. The Legislature recognizes that there are conditions which require municipalities to pass certain other traffic ordinances in regulation of municipal traffic that are not required to regulate the movement of traffic outside of such municipalities. Section 316.008 enumerates the area within which municipalities may control certain traffic movement or parking in their respective jurisdictions. This section shall be supplemental to the other laws or ordinances of this chapter and not in conflict therewith. It is unlawful for any local authority to pass or toattempt to enforce any ordinance in conflict with the provisions of thischapter." (e.s.)
The Legislature clearly recognized the authority of municipalities to adopt certain local legislation to control traffic and parking within municipalities.
In section 316.008, Florida Statutes, the traffic control law enumerates several areas that local authorities are authorized to address, including, _[r]egulating, restricting, or monitoring traffic by security devices or personnel on public streets and highways, whether by public or private parties . . . ._[1] As this office concluded in Attorney General's Opinion 97-06, the use of an unmanned camera to record vehicles that do not remain stopped and standing at a steady red light as required by section 316.075(3)(a), Florida Statutes, would appear to fall within the scope of this authority.
Thus, it is my opinion that the City of Pembroke Pines is authorized by the terms of section 316.002 and 316.008, Florida Statutes, to enact an ordinance authorizing the city to monitor violations of traffic signals within the city and to use unmanned cameras to monitor intersections and record traffic violations.
Question Three
As discussed above, it is my opinion that the City of Pembroke Pines is authorized to monitor violations of traffic signals within the city and to use unmanned cameras to record the license tag numbers of cars involved in such violations.
It is a rule of statutory construction that an express power duly conferred may include the implied authority to use the means necessary to make the express power effective, although such implied authority may not warrant the exercise of a substantive power not conferred.[2] The City of Pembroke Pines is granted the authority to regulate and monitor traffic on municipal streets. The express power to regulate and monitor would appear to encompass the authority to advise those in violation of local ordinances that their actions had been recorded by traffic cameras installed to detect such violations. I see no impediment to the city taking such steps in a public safety effort to reduce dangerous driving behavior relating to the failure to obey red light indications on traffic signal devices.
Therefore, it is my opinion that the City of Pembroke Pines may use the photographic evidence from unmanned cameras to advise a car owner that his or her license tag number has been recorded in a violation of the traffic laws.
Question Four and Five
In a 1997 Attorney General Opinion requested by Palm Beach County, this office considered whether a county could enact an ordinance authorizing the use of unmanned cameras at traffic intersections for the purpose of issuing citations for violations of section 316.075, Florida Statutes. Attorney General Opinion 97-06 concluded that the use of unmanned cameras to detect vehicles that do not remain stopped and standing at a steady red light as required by section 316.075(3)(a), Florida Statutes, would appear to come within the scope of statutory provisions authorizing local governments to monitor traffic by security devices on public streets and highways.
The problem identified in the opinion was whether unmanned "electronic traffic infraction detectors" may independently be used as the basis for issuing citations for violations of these traffic laws. The provisions of the Uniform Traffic Code require that citations be issued when an officer "observes the commission of a traffic infraction[.]"[3] (e.s.) Thus, in order for citations for violations of traffic control laws to be issued, the statutes appear to require that an officer enforcing the traffic law personally observe or have personal knowledge of the particular infraction that serves as the basis for issuing the citation. The opinion concluded that nothing precludes the use of unmanned cameras to record violations of section 316.075, Florida Statutes, but, a photographic record of a vehicle violating traffic control laws may not be used as the basis for issuing a citation for such violations. This office has suggested that legislative amendments would be necessary to allow the photographic record from unmanned cameras monitoring intersections to be used as the sole basis for issuing citations.
Chapter 316, Florida Statutes, contains provisions regulating traffic control signal devices and mandating a vehicular stop at a red light. Section 316.075, Florida Statutes, designates the colors to be used for traffic control signal lights used to control traffic, including municipal traffic, and requires that "the lights shall indicate and apply to drivers of vehicles and pedestrians" as described therein.[4] Pursuant to section316.075(1)(c)1., Florida Statutes:
"Vehicular traffic facing a steady red signal shall stop before entering the crosswalk on the near side of the intersection or, if none, then before entering the intersection and shall remain standing until a green indication is shown . . . ."
The statute recognizes that municipal and county authorities may take certain actions to regulate traffic turning on a steady red signal.[5]
The statute makes a violation of section 316.075, Florida Statutes, a noncriminal traffic infraction, punishable pursuant to Chapter 318 as a moving violation.[6] Thus, Chapter 316, Florida Statutes, contains enforcement and penalty provisions for violations of traffic control signal lights.
In light of the proscription contained in section 316.007, Florida Statutes, that _no local authority shall enact or enforce any ordinance on a matter covered by this chapter unless expressly authorized,_ this office continues to be of the opinion expressed in Attorney General Opinion 97-06 that legislative changes are necessary before local governments may issue traffic citations and penalize drivers who fail to obey red light indications on traffic signal devices.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] Section 316.008(1)(w), Fla. Stat.
[2] See, e.g., Molwin Investment Company v. Turner, 167 So. 33 (Fla. 1936); Gessner v. Del-Air Corp., 17 So.2d 522 (Fla. 1944); cf., Thayerv. State, 335 So.2d 815, 817 (Fla. 1976); Dobbs v. Sea Isle Hotel,56 So.2d 341 (Fla. 1952); Ideal Farms Drainage District v. CertainLands, 19 So.2d 234 (Fla. 1944).
[3] Section 316.640(5)(a), Fla. Stat.
[4] See s. 316.075(1)(a), indicating the actions to be taken when a green indication is given; s. 316.075(1)(b), Fla. Stat., providing direction when a steady yellow indication is presented; and s. 316.075(1)(c), Fla. Stat., relating to a steady red indication.
[5] See 316.075(1)(c)1.a. and b., Fla. Stat., allowing counties and municipalities to prohibit right turns against a steady red signal at any intersection and to prohibit a left turn onto a one-way street intersecting another one-way street at a steady red signal.
[6] See 316.075(4), Fla. Stat.