Mr. John B. Ritch County Attorney Osceola County Post Office Box 760 Kissimmee, Florida 32741
Dear Mr. Ritch:
This is in response to your request for an opinion on substantially the following questions:
 1. MAY OSCEOLA COUNTY UTILIZE THE REVENUE DERIVED FROM THE TOURIST DEVELOPMENT TAX PURSUANT TO THE LOCAL OPTION TOURIST DEVELOPMENT ACT, s 125.0104, F.S., FOR THE FOLLOWING PURPOSES:
 (a) TO CONSTRUCT OR IMPROVE A COMBINATION MULTI-PURPOSE BUILDING TO BE UTILIZED AS A CONVENTION CENTER AND EXHIBITION HALL;
(b) TO CONSTRUCT A HORSE SHOW ARENA TOGETHER WITH STABLES;
(c) TO CONSTRUCT A SOFTBALL TOURNAMENT CENTER;
(d) TO CONSTRUCT A TENNIS AND AQUATIC CENTER;
(e) TO CONSTRUCT A MULTI-PURPOSE FIELD, I.E., A STADIUM;
(f) TO CONSTRUCT A PARK/PICNIC AREA?
 2. MAY TOURIST DEVELOPMENT TAX MONIES WHICH HAVE BEEN ACCUMULATED, BUT NOT EXPENDED, UNDER AN ORDINANCE WHICH PROVIDES THAT ONE-HALF OF ALL MONIES LEVIED WILL BE SPENT TO ADVERTISE AND PROMOTE TOURISM WITH THE OTHER ONE-HALF TO BE SPENT TO MAINTAIN A COUNTY BUREAU TO PROMOTE TOURISM AND CONVENTIONS BE SPENT, IN WHOLE, OR IN PART, TO CONSTRUCT ALL OR ANY PORTION OF THE IMPROVEMENTS OUTLINED ABOVE?
 QUESTION ONE
Section 125.0104, F.S., the Local Option Tourist Development Act, authorizes any county in this state to levy and impose a `tourist development tax.' See, s 125.0104(3)(b), supra. However, nowhere in s 125.0104, supra, is the term `tourist development' defined for purposes of the act even though the tax or revenue derived therefrom is repeatedly denominated `tourist development tax' or `tourist development tax revenue' throughout the section. `Tourist' is defined as `a person who makes a tour especially for pleasure,' The Random House Dictionary of the English Language, The Unabridged Edition, 79 (hereafter referred to as The Random House Dictionary); as `one that makes a tour: one that travels from place to place for pleasure or culture: one that stays overnight usually at an inn or motel,' Webster's Third New International Dictionary of the English Language, Unabridged (hereinafter referred to as Webster's), page 2417. A related term, `tourism,' is defined as `the practice of touring: traveling for recreation: the guidance or management of tourists as a business or a governmental function: provision of . . . accommodations for tourists: the economic activities associated with and dependent upon tourists,' id. at 2417; and as `the activity or practice of touring especially for pleasure; the occupation of providing local transportation, entertainment, lodging, food, etc., for tourists.' The Random House Dictionary, supra, at 1498. `Development' is defined as `the act or process of developing; progress,' id. at 394, and `develop' as `to bring out the capabilities or possibilities of; bring to a more advanced or effective state: to develop natural resources, to cause to grow or expand . . . to bring into being or activity; generate; evolve,' id. at 394. Seealso, 26 C.J.S. Develop and Development, pg. 926.
Various provisions of s 125.0104, F.S., refer to the county's `tourist development plan,' see, s 125.0104(4)(a), F.S., or `plan for tourist development,' see, ss 125.0104(4)(c) (d) and s125.0104(7), F.S., and the `Tourist Development Council,' see, s125.0104(4)(b), (c) (e), F.S. Section 125.0104(4)(e), F.S., requires six of the nine members of the county's Tourist Development Council either be owners or operators of motels, hotels or other tourist accommodations in the county and subject to the tax or persons involved in the tourist industry who have demonstrated an interest in tourist development, but who are not owners or operators of motels, hotels, or other tourist accommodations in the county and subject to the tax. In addition, Ch. 80-209, Laws of Florida, which was an `act relating to tourism and economic development' added subsection (9) to s 125.0104, F.S., and provided additional powers for agencies created for tourism promotion by a county levying the tourist development tax, i.e., to make expenditures for activities in connection with promotional duties and meetings with travel writers, tour brokers, or other persons connected with the tourist industry; foreign travel for the purposes of promoting tourism and travel to the county, and for attending or traveling in connection with travel or trade shows.
The Staff Analysis and Economic Statement of the Senate Finance, Taxation and Claims Committee of June 3, 1977 on HB 2064, enacted as Ch. 77-209, Laws of Florida, and codified as s 125.0104, F.S., the Local Option Tourist Development Act, states that expenditures of revenue derived from the tourist development tax `is limited to tourism related projects, such as convention centers, tourism bureaus, coliseums, etc.'
From the whole context of the Local Option Tourist Development Act, s 125.0104, F.S., and in light of all the foregoing definitions, I am of the opinion that the intent and purpose of the act was to provide for the advancement, generation, growth and promotion of tourism, the enhancement of the tourist industry, and the attraction of conventioneers and tourists from within and without the state to a particular area or county of the state. I am accordingly of the opinion that the acquisition, construction, maintenance, operation, or promotion and financing of the several publicly owned and operated facilities enumerated in s125.0104(5)(a), supra, must be primarily for the purpose of and related to the advancement, furtherance, improvement or promotion of tourism. The determination whether a particular facility or project, tourist development plan or program is tourist related and furthers such primary purpose is a factual determination which must be made by the legislative and governing body of the county founded upon appropriate legislative findings and due consideration of the peculiar and prevailing local conditions and needs; it is not a determination which this office can make for a county. If the facilities and projects listed in your first question meet these requirements and are primarily for the purpose of furthering, improving, and promoting tourism, then the revenues derived from the local tourist development tax may be properly expended for such purposes so long as they also fall within the purview of the authorized uses enumerated in s 125.0104(5), F.S., which will be considered below. On such assumption and premised upon the foregoing considerations, your first question is specifically answered as follows:
(a) Multi-purpose building to be utilized as a convention center and exhibition hall.
Section 125.0104(5), F.S., outlines the authorized uses of the revenue derived from the tourist development tax. Section125.0104(5)(a), F.S., provides, in pertinent part, as follows:
 All tax revenues received pursuant to this section by a county imposing the tourist development tax shall be used by that county for the following purposes only:
 1. To acquire, construct, extend, enlarge, remodel, improve, maintain, operate, or promote one or more publicly owned and operated convention centers, sports stadiums, sports arenas, coliseums, or auditoriums within the boundaries of the county or subcounty special taxing district which approved the ordinance levying and imposing the tax by referendum pursuant to subsection (6) . . . .
2. To promote and advertise tourism . . .; or
 3. To fund convention bureaus, tourist bureaus, tourist information centers, . . . . (e.s.)
It is therefore necessary to determine whether the facilities you outline meet the requirements of the statutory designations set out above, or more particularly, whether the facilities can be properly construed to constitute a convention center, sports stadium, sports arena, coliseum, or auditorium within the purview of s 125.0104(5)(a)1., F.S.
This office has been unable to find a definition for either the term `convention center' or `exhibition hall.' However, `exhibition' is defined by Webster's supra, at 796, as a public show, display or show and by The Random House Dictionary, supra, at 499, as `a public display, as the works of artists or craftmen, the products of farms or factories, the skills of performers, objects of general interest, etc.' A convention is stated to mean `a meeting or formal assembly, as representatives or delegates for action on particular matters' and `usually suggests a meeting of delegates representing political, church, social or fraternal organizations.' The Random House Dictionary, supra, at 319.
Conventional wisdom and common experience tell us that convention facilities and `civic centers' are commonly used for such things as concerts, tradeshows, circuses and other exhibitions and performances. A multi-purpose building used as a place for meetings of conventions and exhibitions as defined above would, in my opinion, fall within the scope of the term `convention centers' as used in s 125.0104(5)(a)1., F.S. I therefore conclude that such a building or project designed and maintained primarily for the purpose of furthering the advancement, improvement and promotion of tourism may be funded from the local tourist development tax revenues.
(b) Horse Show Arena and Stables
A `show' is an exhibit or display or a presentation or performance as a public entertainment or spectacle. The Random House Dictionary, supra, at 1320. A `horse show' is defined as `a competitive exhibition of horses and vehicles especially as an annual fashionable event.' Webster's supra, at 1093. An `arena' is defined as `a central area or open space within an enclosure used for public entertainment . . . a building containing an arena used especially for indoor sports,' id. at 115, and as `a platform, ring, area or the like, used for sports or other forms of entertainment, surrounded by seats for spectators,' The Random House Dictionary, supra, at 79. See also, Webster's, supra, at 443 defining `coliseum,' in part, as a large building designed to hold many spectators or activities, as a basketball game or horse show.
In light of the above definitions, it is my opinion that a horse show arena would fall within the purview of the term `sports arena' as used in s 125.0104(5)(a)1., F.S. Therefore, it is my opinion that a horse show arena and its accessory or auxiliary barns or stables designed and promoted primarily for the advancement, improvement and promotion of tourism may be financed with the proceeds derived from the local tourist development tax.
(c) Softball Tournament Center
As previously stated, authorized uses of the tourist development tax include, inter alia, the construction of sports stadiums, sports arenas, and coliseums. The term `sport' is defined by the Random House Dictionary, supra, at 1375, as an athletic activity requiring skill or physical prowess and often of a competition nature, as racing, baseball, tennis, golf, bowling, wrestling, boxing, hunting, fishing, etc. . . . a diversion: recreation: pleasant pastime. The term `stadium' is defined by Webster's supra, at 2218, as a large, usually unroofed, structure with tiers of seats for spectators built in various shapes and enclosing a field usually for sports events (as baseball, football, track and field), and by The Random House Dictionary, supra, at 1382, as `a sports arena . . . with tiers of seats for spectators.' The term `coliseum' is defined by Webster's supra, at 443, as a large building designed to hold many spectators or activities calling for a good deal of room (as a basketball game or horse show): a large assembly hall: stadium, and by The Random House Dictionary, supra, at 289, as an amphitheater, stadium, large theater, or the like, for public meetings, sports, exhibitions, etc.
In light of the above definitions, it is my opinion that a softball tournament center may fall within the purview of the terms `sports stadium, sports arenas, coliseums' as used in s125.0104(5)(a)1., F.S. Therefore, it is my opinion that a softball tournament center designed and promoted primarily for the advancement, improvement and promotion of tourism may be financed with the proceeds derived from the local tourist development tax.
(d) Tennis and Aquatic Center
The definitions cited above for the terms `sport,' `stadium,' and `coliseum' are incorporated by reference here. `Tennis' is included in the activities within the above definition of `sport,' The Random House Dictionary at 1375, and `aquatics' is defined as sports practiced on or in water. Id. at 75. In light of the above definitions, it is my opinion that a tennis and aquatic center may fall within the purview of the terms `sports stadiums, sports arenas, coliseums' as used in s 125.0104(5)(a)1., F.S. Therefore, it is my opinion that a tennis and aquatic center designed and promoted primarily for the advancement, improvement, and promotion of tourism may be financed with the proceeds from the local tourist development tax.
(e) Multi-Purpose Field, i.e., a stadium
Section 125.0104(5)(a)1., F.S., specifically mentions `sports stadium' as one of the authorized uses of the revenue at issue herein and in view of the above definitions of `stadium' and `coliseum,' it is my opinion that a multi-purpose field or stadium designed and promoted primarily for the advancement, improvement and promotion of tourism may be financed with the proceeds from the local tourist development tax.
(f) Park/Picnic Area
In AGO 79-30, this office was asked to what extent may a county use the tourist development tax revenues to acquire, construct, extend, enlarge, repair, improve, maintain, operate, or promote publicly owned and operated parks or beaches. In response, this office opined that the tourist development tax revenues may be used only for the purposes enumerated in s 125.0104(5), F.S., and since parks and beaches were not among the facilities mentioned under s 125.0104(5)(a)1., supra, tourist development tax revenues could not be used for the same. See, Thayer v. State,335 So.2d 815 (Fla. 1976); Ideal Farms Drainage District v. Certain Lands,19 So.2d 234 (Fla. 1944). Based upon the same rationale, reasoning and authority cited in AGO 79-30, it is my opinion that even if tourist related, parks and picnic areas are beyond and outside the scope of the limitations and terms of the facilities enumerated in s 125.0104(5)(a) and expenditure therefor from the tourist development tax revenues is unauthorized.
QUESTION TWO
It is a general or fundamental principle that funds raised by taxation for one purpose cannot be converted to another without legislative authority. Supreme Forest Woodmen Circle v. Hobe Sound Co., 189 So. 249 (Fla. 1939); AGO 77-26. Cf., Dickinson v. Stone,251 So.2d 268 (Fla. 1971); AGO 64-97. However, various provisions of the Local Option Tourist Development Act contemplate amendment and change to a county's tourist development plan and in view of the terms of the existing ordinance levying the tourist development tax, as amended, and the express authorization in s125.0104(5)(a)1., F.S., for the use of these tax revenues for the purposes contemplated by the county, there would not appear to be any appropriation to or diversion of the accumulated and unexpended tax revenues in question to an unauthorized use or purpose.
Section 125.0104(4), F.S., sets forth the procedure that must be followed to levy the tax. Prior to enactment of the ordinance levying and imposing the tax, the county's Tourist Development Council must prepare and submit to the governing board of the county for its approval a plan for tourist development. The plan shall set forth, inter alia, `a list, in the order of priority, of the proposed uses of the said tax revenue by specific project or special use as the same are authorized under subsection (5).' See, s 125.0104(4)(c), F.S. Section 125.0104(4)(d), F.S., goes on to provide as follows:
 The governing board of the county shall adopt the county's plan for tourist development as part of the ordinance levying the tax. After enactment of the ordinance levying and imposing the tax, the plan of tourist development may not be substantially amended except by ordinance enacted by an affirmative vote of a majority plus one additional member of the governing board. (e.s.)
See also, s 125.0104(7), F.S., which also contemplates that the plan for tourist development approved by the governing body of the county may be `amended from time to time pursuant to paragraph (4)(d).'
Moreover, the ordinance of your county which originally levied the tourist development tax provides in s 2, Ordinance #77-7, Osceola County, Florida as follows: `The above and foregoing tourist development plan may not be amended except by ordinance enacted by an affirmative vote of a majority plus one additional member of the Board of County Commissioners.' (e.s.) See also, s 4, supra, which gives notice and states that revenues raised by the tax may be pledged by the Board of County Commissioners to secure and liquidate revenue bonds issued by the county for one or more of the purposes outlined in s 125.0104(5)(a)1., F.S., `if same should ever be hereinafter established by appropriate amendment to the ordinance, as one of the uses to be made of the tourist development tax hereby levied.' See also, Ordinance 79-7, Osceola County, Florida, which, inter alia, provides that the tourist development plan may not be amended except by ordinance enacted by an affirmative vote of a majority plus one additional member of the Board of County Commissioners and directs the Visitors Bureau to study the feasibility of acquiring and maintaining the publicly owned facilities enumerated in s 125.0104(5)(a)1., F.S.
In light of all of the above, it is my opinion that upon due amendment by ordinance enacted by the requisite vote of the governing body of the county, the county's plan for tourist development, including the proposed uses of the tax revenue, may be changed and thus unexpended proceeds of the tax levied under Ordinance #77-7, supra, as amended by Ordinance #79-7, supra, may be utilized and expended to construct one or more of the projects listed in Question One (other than the park/picnic area) if such projects or facilities are designed and promoted primarily for the advancement, improvement and promotion of tourism and fall within the purview of the facilities enumerated in s 125.0104(5)(a)1., F.S.
In summary, until judicially determined otherwise, it is my opinion that (1) the following facilities, if tourist related or designed and maintained primarily for the purpose of furthering the advancement, improvement, and promotion of tourism, fall within the purview of the facilities enumerated in s125.0104(5)(a)1., F.S., and thus may be constructed with funds derived from the tourist development tax: a multi-purpose building to be utilized as a convention center and exhibition hall, a horse show arena with stables, a softball tournament center, a tennis and aquatic center, and a multi-purpose field or stadium; (2) even if tourist related, parks and picnic areas are beyond and outside the scope of the limitations and terms of the facilities enumerated in s 125.0104(5)(a), F.S., and expenditure from the tourist development tax revenues therefor is unauthorized; (3) upon due amendment by ordinance enacted by the requisite vote of the governing body of the county, the county's plan for tourist development, including the proposed use of the tourist development tax revenues, may be changed and thus unexpended proceeds of the tax levied under existing ordinances, as amended, may be utilized and expended to construct one or more of the facilities enumerated in s 125.0104(5)(a)1., F.S.
Sincerely,
Jim Smith, Attorney General
Prepared by: Linda Lettera, Assistant Attorney General