799 So.2d 1110 (2001)
John ST. JOHN, Appellant,
v.
Gilbert COISMAN, Appellee.
No. 5D00-3031.
District Court of Appeal of Florida, Fifth District.
November 16, 2001.
*1111 Barbara C. Fromm and Gayle Smith Swedmark of Jolly, Peterson & Waters, P.A., Tallahassee, for Appellant.
Carri S. Leininger and James O. Williams, Jr., of Williams & Leininger, P.A., West Palm Beach, for Appellee.
SHARP, W., J.
St. John, the defendant below, appeals from an adverse final judgment, after a jury trial which awarded Coisman compensatory damages of $102,500.00,[1] and punitive *1112 damages in the amount of $333,000.00. The punitive damage award is challenged on appeal as being so gross the trial court abused its discretion in denying a remittitur of the award, and as being excessive under the due process clause of the fourteenth amendment to the federal constitution. Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). This latter ground mandates that we reverse and remand this cause to the trial court for further proceedings.
The claims Coisman prosecuted against St. John were for false arrest based on state law, assault and battery, false arrest based on 42 U.S.C. section 1983, and for violation of parental rights in violation of 42 U.S.C. section 1983. The verdict returned found for Coisman, the plaintiff below, on all of the claims except violation of parental rights. The punitive damage award was based on the section 1983 false arrest count.
These charges grew out of an altercation between Coisman and St. John when Coisman attempted to exercise his visitation rights with his children, and approached the residence in which Coisman's former wife and children lived with St. John. There had been prior confrontations between Coisman, St. John, and the former wife, and a circuit judge had issued a domestic violence injunction against Coisman. To avoid trouble, Coisman brought with him a Melbourne police officer and did not step onto the property, pursuant to the injunction. However, St. John, an off-duty deputy, insisted Coisman had violated the injunction and demanded he be arrested. When the Melbourne police refused to do so, he called fellow deputies with the sheriffs department. They came to the scene and arrested Coisman. There was no physical violence, but Coisman nonetheless spent one night in jail. Later he was exonerated of the charges, and brought this action against St. John, the arresting officers, and the sheriffs department. A settlement was reached with all defendants except St. John.
We agree there was sufficient evidence for this case to have been sent to the jury and the trial court did not err in failing to direct a verdict for St. John on any of the counts tried. We also agree there was sufficient grounds presented to afford a basis for a punitive damage award. However, the amount of the punitive damage award is the primary focus of this appeal.
This is a new and developing area of law. See Cooper; BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996); Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Where punitive damages are challenged on federal constitutional grounds in a state court, the first step in the analysis should be to determine whether state statutes apply to potentially limit or reduce the damages. If they do and the result is remittitur or reduction, this may obviate the federal constitutional challenge. But even if reduced, punitive awards may still need to be reviewed under the federal criteria, since the federal criteria are not the same as the state criteria for limiting, capping, or reducing the award.
The trial court held that the caps on punitive damages set forth in section 768.73, Florida Statutes (1999), did not apply to this case, because the jury found the defendant guilty of intentionally violating the plaintiffs civil rights and that the plaintiff was harmed by the conduct of the defendant. See § 768.73(1)(c). The section 1983 count was the only count for which the trial judge instructed the jury that it could award punitive damages.[2]Transgo, *1113 Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001 (9th Cir.1985). It appears that section 768.73 may not apply to a federal cause of action for intentional deprivation of civil rights because section 768.71(1), entitled "Applicability, conflicts," provides that "this part [Part II, Damages] applies to any action for damages, whether in tort or in contract," "[e]xcept as otherwise specifically provided."[3] However, we do not have to reach that question in this case.
The applicable Florida statute is the 1993 version of section 768.73, because that is the statute in effect when this cause of action arose.[4]See Smith v. Department of Insurance, 507 So.2d 1080 (Fla.1987); Gordon v. State, 585 So.2d 1033 (Fla. 3d DCA 1991), approved, 608 So.2d 800 (Fla.1992), cert. denied, 507 U.S. 1005, 113 S.Ct. 1647, 123 L.Ed.2d 268 (1993). The 1993 version of this statute was limited by its statutory language,[5] to civil actions based on "negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty," and did not then include intentional torts, unless committed in connection with commercial transactions. Alamo Rent-A-Car v. Mancusi, 599 So.2d 1010 (Fla. 4th DCA 1992), approved in part, quashed in part, 632 So.2d 1352 (Fla.1994). Thus it clearly does not apply to this case.
Section 768.74 is another potentially applicable statute. The trial court did not expressly address the criteria set forth in section 768.74, "Remittitur and Additur," in denying the defendant-appellant's motion for remittitur. It denied relief on the ground stated that the amount of punitive damages awarded "did not shock the conscience of the court."[6]
In any event, the trial court's consideration of section 768.74 does mandate further consideration of the punitive damage award based on federal constitutional criteria, because the criteria in section 768.74 have very little correlation with the criteria set forth in Cooper and BMW v. Gore.
The statutory criteria of section 768.74 are:
(a) whether the amount awarded is indicative of prejudice, passion or corruption on the part of the trier of fact;
(b) whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;

*1114 (c) whether the trier of fact took improper elements of damages into account to arrive at the amount of damages by speculation and conjecture;
(d) whether the amount awarded bears a reasonable relation to the amount of damages with respect to the injury suffered; and
(e) whether the amount awarded was supported by the evidence and could be adduced in a logical manner by reasonable persons.
Most of these criteria are designed to measure whether or not there is evidence to support the amount of compensatory damages awarded. Only (d) relates to the federal criteria. As the United States Supreme Court pointed out in Cooper, punitive damages are an expression of moral condemnation, and unlike compensatory damages, do not rest upon a determination of factual issues.[7]
Further, the standard of review by a state appellate court of a trial court's determination under this section is abuse of discretion,[8] or under the statute, close scrutiny. § 768.74(3), Fla. Stat. In contrast, the United States Supreme Court has held that when punitive damages are challenged as excessive on federal constitutional grounds, the appellate court's review of the award must be pursuant to a de novo standard. Cooper.
The criteria set forth in Cooper and Gore are controlling when a punitive damage award is challenged as excessive on federal constitutional grounds. These criteria are:
(1) the degree of the defendant's reprehensibility or culpability;
(2) the disparity (the ratio or relationship) between the actual harm caused to the plaintiff and the amount of the punitive damage award;
(3) how much the punitive damage award exceeds civil or criminal sanctions for comparable conduct.
Stated another way, the third criterion is to consider whether the defendant's conduct was sufficiently egregious to merit the amount of punitive damages in light of other awards in similar cases.
With regard to the first criterion, a court must look at the evidence adduced in the case in a light most favorable to the plaintiff. The trial court is in a better position than an appellate court to make this kind of assessment, and it would be helpful if it did so first. From the record it appears that the defendant did act out of malice and ill will towards the plaintiff, sufficient to merit a punitive damage award. However, it also appears that the altercation arose out of a domestic violence situation or conflict, and that the defendant over-reacted because of prior conflicts between the two concerning the plaintiff's visitation with his children and the treatment of his ex-wife. Further, the defendant did not use force or violence.
With regard to the second criterion, the harm suffered by the plaintiff, the record suggests it was relatively small to merit the amount of punitive damages awarded by the jury. The plaintiff was treated badly and suffered embarrassment and humiliation, when he was falsely arrested and jailed for one night. As a result, he lost some work time and was required to obtain the services of an attorney. But he was not physically harmed, and no charges were brought against him.
With regard to the third criterion, courts are directed to look at what other *1115 civil or criminal sanctions are available in this state to punish comparable behavior, and balance how they relate to the punitive damage award. The defendant in this case uttered a false statement which resulted in the plaintiff's unlawful arrest. There is no comparable criminal or civil statute which punishes false arrest in Florida. Rather it is treated as an intentional tort under case law. See, e.g., Garcia v. Reyes, 697 So.2d 549 (Fla. 4th DCA 1997), dicta.
Punishment for the kind of civil rights violation which occurred in this case and for which the punitive damage award was imposed, would be governed by section 760.51, Florida Statutes (2000), Violations of constitutional rights, civil action by the Attorney General; civil penalty. It provides:
(1) Whenever any person, whether or not acting under color of law, interferes by threats, intimidation, or coercion or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any other person of rights secured by the State Constitution or laws of this state, the Attorney General may bring a civil or administration action for damages, and for injunctive or other appropriate relief for violations of the rights secured. Any damages recovered under this section shall accrue to the injured person ..... (emphasis added)
The cause of action lies with the state, and the attorney general, who brings the suit on behalf of the state, is entitled to attorney's fees under this section. Further, the statute provides:
(2) Any person who interferes by threats, intimidation, or coercion, ... is liable for a civil penalty of not more than $10,000 for each violation. ... A civil penalty so collected shall accrue to the state and shall be deposited as received into the General Revenue Fund unallocated. (emphasis added)
As the United States Supreme Court noted in Gore, this last factor is a broad one, which takes into account many circumstances, including fair notice to the defendant that he can expect to be hit with a punitive damage award similar to the one actually imposed. It encompasses a traditional factor considered by Florida courts-the financial circumstances of the defendant.[9] Is the defendant a financially strong corporation or a wealthy individual for whom such an award is bearable or a lower income individual for whom such an award is devastating? There is a suggestion in this record that the defendant's yearly income is $35,000.00, which places him in the category of being potentially devastated by the present award of punitive damages.
Punitive damage awards in violation of civil rights cases as high or higher than the one in this case, have been upheld where they involve rape, sexual assault, severe physical injuries, violence or long term confinement. See Lee v. Edwards, 101 F.3d 805 (2d Cir.1996); Mathie v. Fries, 121 F.3d 808 (2d Cir.1997), and cases cited therein. But those cases are distinguishable, because in this case there was no *1116 violence and the plaintiff suffered no physical injury or long term confinement.
In Lee v. Edwards, a case similar to this one, but where the facts were more egregious, a punitive damage award was reduced from $200,000 to $75,000. There, during an arrest for DUI, a police officer used excessive force on the plaintiff, hitting him on his head after he was handcuffed, causing injuries. The officer was found guilty of assault and battery, and malicious prosecution. The officer instituted charges against the plaintiff for assaulting a police officer and resisting arrest. These charges were later dropped.
The court said the egregiousness of the defendant's conduct in Lee should be enhanced because he was acting as a police officer in his official capacity. But in this case, the defendant was off duty, and although his status as a police officer no doubt enabled him to prevail upon his fellow officers to arrest the plaintiff, he was not acting in his official capacity. And as noted above, the defendant committed no violence.
In another civil rights deprivation case, King v. Macri, 993 F.2d 294 (2d Cir.1993), the court reduced the punitive damage awards for two police officers from $175,000 to $100,000, for the more culpable officer and from $75,000 to $50,000 for the officer less culpable. In that case, the plaintiff suffered considerable harm when the officers exercised uncalled for violence in effectuating the arrest. He was also wrongfully charged by one of the officers with assault, obstructing government administration, resisting arrest, and disorderly conduct, which resulted in him being jailed for two months. All charges were eventually dropped. Although at trial the defendants presented no evidence of their earnings, the court said it was permissible to do so on motion for remittitur. The appellate court concluded, under an abuse of discretion standard then required by the case law, that the award shocked its judicial conscience, and accordingly ordered a new trial or remittitur as described above.
The award in this case appears excessive under these criteria. But for a better resolution of this question by us on de novo review, the record needs further development.[10] On remand, the trial court and the attorneys should be afforded an opportunity to address the new federal law. At the time of the trial and post-judgment proceedings, Cooper had not yet been decided. It is essentially a "pipeline case" whose outcome is controlled by later and new appellate law.[11]
AFFIRMED in part; Punitive Damage Award REVERSED and REMANDED for further proceedings.
HARRIS J., concurring in part and dissenting in part with opinion.
SAWAYA, J., concurring in part and dissenting in part with opinion.
HARRIS, J., concurring in part, dissenting in part:
I concur with Judge Sharp's analysis of the Cooper[1] factors and agree that the punitive damage award in this case is excessive and must be reversed. I disagree *1117 however, that the matter needs to be remanded to the trial court for further consideration in light of Cooper. That the trial court was unaware of Cooper at the time it denied a remittitur is irrelevant. The fact is that the trial court determined the award was not excessive under Florida law. It is this decision which must now be submitted to a Cooper analysis and, according to the United States Supreme Court, it is the appellate court, and not the trial court, which should make this analysis. The Cooper analysis, as shown by its factors, is designed for the appellate court.[2]
The United States Supreme Court in Cooper held that punitive damages which are grossly excessive, like excessive fines in criminal cases, violate the due process protection of the United States Constitution. Although the states are free to enact their own punitive damage statutes, excessive awards under such statutes are unconstitutional under the United States Constitution. And if the award is attacked on a constitutional basis, such as being grossly excessive, then the courts of appeal must apply a de novo standard of review instead of an abuse of discretion standard. Further, in reviewing the trial court's determination of constitutionality of the award, there is to be no "deferential appellate review." Cooper Industries, Inc., 121 S.Ct. at 1688.
The reason Cooper requires that the appellate courts exercise de novo review to determine whether the punitive damage award is grossly excessive is that the concept of "gross excessiveness" is a fluid concept that takes its substantive content from the particular context in which it is being evaluated. The concept acquires content only through case-by-case application. As Justice Breyer stated in his concurring opinion in BMW of North America, Inc. v. Gore, 517 U.S. 559, 587, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996):
Requiring the application of law, rather than a decisionmaker's caprice, does more than simply provide citizens notice of what actions may subject them to punishment; it also helps to assure the uniform treatment of similarly situated persons that is the essence of law itself.[3]
Even though appellant's conduct was deplorable and warranted the jury's moral condemnation, the jury is limited in the amount of "punishment" it can inflict on the wrongdoer. The jury's goal should not be to bankrupt the defendant; it should be to set an amount which is sufficient to discourage like conduct. Here, the jury's punitive award is excessive under the Supreme Court's criteria which we are required to consider in our independent examination. We are mandated to consider the degree of appellant's reprehensibility, the relationship between the award and *1118 the harm caused the victim, and sanctions imposed in comparable cases. Appellee points out that the punitive damage award herein is only slightly more than three times the amount of compensatory damages. But the relationship between the amount of compensatory damages and the amount of punitive damages is not one of the United States Supreme Court mandated elements for the appellate court to consider.[4] Perhaps there is not such an element of ratio relationship because compensatory damages themselves may sometimes blur the distinction between the two types of damages. The Supreme Court observed in Cooper that punitive damages at one time operated to compensate for intangible damages such as pain and suffering. Similarly, compensatory damages may sometimes take on certain aspects of punitive damages such as in this case where the jury awarded over $90,000 for "pain and suffering" for spending one night in jail. This award has some appearance of, and perhaps serves some of the purposes for, punitive damages.
In this case, I agree with the jury that appellant's conduct was reprehensible. But I believe that a combined award of over $400,000 to compensate appellee, and to punish appellant, even for conduct which resulted in a night in jail is simply too excessive to meet the Cooper due process requirements. Referring the matter back to the trial court will not change this fact.
Unquestionably, appellee was embarrassed, inconvenienced, and humiliated because of appellant's misconduct. But such emotional injuries lasted only a short while and, most importantly, appellee was not physically abused in any fashion. In Lee v. Edwards, 101 F.3d 805 (2d Cir.1996), one who was falsely arrested was beaten over the head seven or eight times with a baton by the arresting officer. His punitive award was reduced from $200,000 to $75,000. In Mathie v. Fries, 121 F.3d 808 (2d Cir.1997), where the prisoner/plaintiff was sexually assaulted by a prison official, the punitive award was reduced from $500,000 to $200,000. In Weyant v. Okst, 182 F.3d 902 (2d Cir.1999), a punitive award of $2,500 was upheld for a plaintiff who had been punched in the groin. Finally, in King v. Macri, 993 F.2d 294 (2d Cir.1993), two security officers used excessive force in the arrest (punching plaintiff even after he was handcuffed). The jury returned punitive awards against one officer for $175,000 and the other for $75,000. The reviewing court reduced these awards to $100,000 and $50,000 respectively.
In light of the above cases construing the "due process" limits of punitive damages and based on our obligation under Cooper, I agree that a punitive award in the amount of $333,000 to this plaintiff who spent only one night in jail and who suffered absolutely no physical abuse is unconstitutionally excessive. Now what do we do?
Should we send the case back to the trial court to determine the amount of an appropriate remittitur which, if not accepted by plaintiff, would require a new trial or should we ourselves determine the amount of punitive damages justified under the circumstances of this case? Since the Supreme Court in Cooper required our de novo review on the basis that we are better situated than the trial court to consider other awards based on comparable conduct, it appears that we should not merely determine whether the jury award is grossly excessive but also, if it is, determine *1119 a maximum amount of punitive damages which, if awarded by a subsequent jury, would not be so "grossly excessive" as to invoke our constitutional involvement. If we don't determine that amount now, we are bound to determine it later. If the trial court refuses to require a remittitur or makes only a small one, the defense will be back claiming the court has once again violated the requirements of Cooper. If the court requires a meaningful remittitur, plaintiff may choose a new trial with the new jury having no greater guidance than the last one or plaintiff may instead challenge the amount of the remittitur as being greater than required by Cooper.
Since we have, in effect, determined the maximum amount of allowable punitive damages under the circumstances of this case, remanding to the trial court is a waste of judicial labor and causes unnecessary delay and expense to the parties. In making our determination as to whether a particular award is grossly excessive, do we not have to first determine what award would be appropriate under the Cooper factors and, having done so, have we not thereby established the maximum amount for punitive damages which is not excessive? In Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 20-21, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court stated: "Appellate review makes certain that the punitive damages are reasonable in their amount and rational in light of their purpose to punish what has occurred and deter its repetition." That is our goal herein.
Eliminating the award in Mathie because the sexual abuse therein almost certainly influenced the higher award, the maximum award approved by the courts in Lee, Weyant, and King for police misconduct relating to an arrest was $100,000 and the average award was for less than $60,000. All of these cases, because of the additional element of physical abuse, were more abhorrent than the case at bar. Therefore, if we are to be guided by the results of similar cases, the award in our case should not be as great as these awards. I believe that an award of $50,000 for punitive damages under the facts of this case is the maximum amount sustainable under Cooper.
The next question is whether we should order the trial court to enter judgment for punitive damages in this amount or submit the figure as a remittitur so that plaintiff will have the option to choose between this amount and a new trial. But if the remittitur is the maximum amount sustainable under any circumstances, why would the plaintiff ever opt for a new trial in which he or she might get less but never more?
I would reverse the award of punitive damages and remand the cause to the trial court for entry of a corrected judgment for punitive damages in the amount of $50,000. Because I believe the issues raised in this appeal are of exceptional importance, I would certify the following question to the supreme court:
IF IN APPLYING THE COOPER FACTORS WE DETERMINE THAT THE AWARD OF PUNITIVE DAMAGES IS GROSSLY EXCESSIVE, SHOULD WE MERELY REMAND THE MATTER BACK TO THE TRAIL COURT FOR A NEW TRIAL ON THAT ISSUE OR SHOULD WE DETERMINE THE MAXIMUM AMOUNT OF PUNITIVE DAMAGES JUSTIFIED ON THE BASIS OF THE COOPER FACTORS AND REMAND FOR ENTRY OF A JUDGMENT IN THAT AMOUNT?
SAWAYA, J., concurring in part, dissenting in part.
In this case of first impression in Florida, I concur with the decision to reverse the punitive damage award and remand this case to the trial court. Because the constitutional issue we address relating to *1120 the amount of the punitive damage award was not raised in the trial court and has not been properly raised, briefed or argued in the proceedings before this court, I agree that the appropriate remedy is for this court to remand this case to the trial court to allow the parties the opportunity to do so and to allow the trial court to make appropriate findings relating to the criteria established in Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).
We find support for our decision in In re The Exxon Valdez, 270 F.3d 1215, (9th Cir. 2001), wherein the court reversed the punitive damage award and remanded the case to the trial court to give it the opportunity to apply the Cooper standards first. The court stated that no direct constitutional challenges to the amount of the award were raised by Exxon until after the judgment and that Cooper had not been decided at the time the case was proceeding in the trial court. Therefore, the trial court never had the opportunity to apply the appropriate standards. The court specifically held:
We therefore have no constitutional analysis by the district court over which to exercise any de novo review. Because we believe the district court should, in the first instance, apply the appropriate standards, we remand for the district court to consider the constitutionality of the amount of the award in light of the guideposts established in BMW.

Id. at 1240 (footnote omitted).
Although I agree that the de novo standard of review applies to the instant case, I do not agree that the de novo standard of review required under the decision in Cooper applies to punitive damage awards that are limited (capped) pursuant to section 768.73, Florida Statutes. Therefore, in this opinion I will explain my strongly held view that Cooper does not apply to punitive damage awards that are subject to the statutory caps contained in section 768.73; and explain why section 768.73 does not apply to the instant case.

The Decision In Cooper

In Cooper, the jury returned a verdict pursuant to the plaintiff's common law claim of unfair competition awarding $50,000 in compensatory damages and punitive damages of $4.5 million against the defendant. Pursuant to its prior decision in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996),[1] the United States Supreme Court vacated the punitive damage award, which was 90 times the total of compensatory damages, finding that the Court of Appeals erroneously applied the abuse of discretion standard in reviewing the amount of the award. The Court held that the de novo standard applies when constitutional issues are directed to the amount of the punitive damage award. The Court further held that the following three criteria should be applied in assessing the constitutionality of a punitive damage award pursuant to the de novo standard of review:
(1) the degree or reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded *1121 by the jury and the civil penalties authorized or imposed in comparable cases.
121 S.Ct. at 1687 (citing Gore, 517 U.S. at 574-75, 116 S.Ct. 1589).[2]
The Court in Cooper specifically noted that the Eighth Amendment prohibition of excessive fines applies to the states via the Fourteenth Amendment Due Process Clause. The Due Process Clause applies to ensure that a defendant has fair notice of the penalty that may be imposed for his or her wrongful conduct. Cooper; Gore. Thus notice of the severity of the fine is paramount to ensure compliance with fundamental fairness and due process. In Cooper, the Court reaffirmed the decision in Gore holding that the three criteria listed in Gore should be utilized in a de novo review of a punitive damage award to ensure that due process is complied with. Moreover, the Court has consistently held that the principle of proportionality is central to any inquiry under the Excessive Fines Clause. United States v. Bajakajian, 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998); see also Department of Envtl. Prot. v. Zabielinski, 785 So.2d 517 (Fla. 3d DCA 2000). The principle of proportionality requires that the amount of the fine be proportional to the gravity of the offense it is intended to punish. Cooper; Bajakajian. If the fine is grossly disproportional, it is excessive and hence unconstitutional. Therefore, notice of the penalty and application of the principle of proportionality are central to the holding in Cooper that the de novo standard of review should be applied to assess the constitutionality of a punitive damage award.
In Cooper and Gore, there was no applicable statute that limited the amount of punitive damages that could be awarded. Moreover, there is no federal statute of which I am aware that generally places limits on the amount of punitive damages that may be awarded in all cases. The Court in Gore recognized that many states do not have legislation that limits the amount of punitive damages when it observed:
In our federal system, States necessarily have considerable flexibility in determining the level of punitive damages that they will allow in different classes of cases and in any particular case. Most States that authorize exemplary damages afford the jury similar latitude, requiring only that the damages awarded be reasonably necessary to vindicate the State's legitimate interests in punishment and deterrence. See TXO [Prod. v. Alliance Res. Corp.], 509 U.S. [443], at 456, 113 S.Ct., at 2719, 125 L.Ed.2d 366; [Pacific Mut. Life Ins. Co. v.] Haslip, 499 U.S. [1], at 21-22, 111 S.Ct., at 1045, 1045-1046, 113 L.Ed.2d 1. Only when an award can fairly be categorized as "grossly excessive" in relation to these interests does it enter the zone of arbitrariness *1122 that violates the Due Process Clause of the Fourteenth Amendment. Cf. TXO, 509 U.S., at 456, 113 S. Ct., at 2719.
Gore, 517 U.S. at 568, 116 S.Ct. 1589.
Justice Breyer, in his concurring opinion in Gore, noted that the Alabama statute that allowed recovery of punitive damages in that case placed no limits on the amount that would have restricted the discretion of the jury in making the award that would have placed it within the confines of what was constitutionally acceptable. Justice Breyer noted that other states have enacted statutes that place limits on the amount of punitive damage awards and thereby limit the discretion that could be utilized in making the award when he stated:
[T]here are no other legislative enactments here that classify awards and impose quantitative limits that would significantly cabin the fairly unbounded discretion created by the absence of constraining legal standards. Cf., e.g., Tex. Civ. Prac. & Rem. Code Ann. § 41.008 (Supp.1996) (punitive damages generally limited to greater of double damages, or $200,000, except cap does not apply to suits arising from certain serious criminal acts enumerated in the statute); Conn. Gen. Stat. § 52-240b (1995) (punitive damages may not exceed double compensatory damages in product liability cases); Fla. Stat. § 768.73(1) (Supp. 1993) (punitive damages in certain actions limited to treble compensatory damages); Ga. Code Ann. § 51-12-5.1(g) (Supp.1995) ($250,000 cap in certain actions).
Gore, 517 U.S. at 595, 116 S.Ct. 1589 (emphasis supplied). Justice Breyer then observed that without limits similar to those imposed by the above referenced state statutes, the award in Gore, which was rendered pursuant to an unrestricted statute, was both "(a) the product of a system of standards that did not significantly constrain a court's, and hence a jury's, discretion in making that award; and (b) grossly excessive in light of the State's legitimate punitive damages objectives." Id.
The Court in Cooper recognized that legislative enactments that appropriately restrict the amount of punitive damages do not violate the Eighth Amendment when it specified the limits of its holding:
We express no opinion on the question whether Gasperini [v. Center for Humanities, Inc., 518 U.S. 415, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)] would govern and de novo review would be inappropriate if a State were to adopt a scheme that tied the award of punitive damages more tightly to the jury's finding of compensatory damages. This might be the case, for example, if the State's scheme constrained a jury to award only the exact amount of punitive damages it determined were necessary to obtain economically optimal deterrence or if it defined punitive damages as a multiple of compensatory damages (e.g., treble damages).
Cooper, 121 S.Ct. at 1687 n. 13 (emphasis supplied). The Court in Gasperini held that the abuse of discretion standard of review applies to compensatory damage awards. Thus the decision in Cooper is clearly meant to apply to statutory punitive damage provisions that do not place limits on the amount that may be awarded, which leaves the jury free to award whatever amount it deems appropriate based on its unbridled discretion.
Statutory provisions that limit punitive damage awards to a multiple of three times the compensatory damage award, as suggested by the Court in Cooper, are constitutionally significant because they ensure that any award falls within the range of what the Court has previously held was constitutionally permissible. Specifically, in Pacific Mutual Life Insurance *1123 Co. v. Haslip, 499 U.S. 1, 23-24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Court concluded that even though a punitive damage award of "more than 4 times the amount of compensatory damages" might be "close to the line," it did not "cross the line into the area of constitutional impropriety." Thus statutory caps of three times the amount of compensatory damages place punitive damage awards well within the umbra of the constitutional limits enunciated in Haslip.
Therefore, pursuant to the language I have quoted from Cooper and the holding in Haslip, I believe that the de novo standard of review does not apply to punitive awards capped pursuant to section 768.73, Florida Statutes. It is important to keep in mind that the issue we confront in this case is whether the punitive damage award is "grossly excessive" and thus unconstitutional. Haslip says it is not, and as the Court specifically stated in Gore, in adhering to the grossly excessive standard, that it is "[o]nly when an award can be fairly categorized as grossly excessive ... does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." 517 U.S. at 568, 116 S.Ct. 1589 (emphasis supplied). Furthermore, claims of excessiveness relating to capped punitive damage awards are dealt with pursuant to the provisions of section 768.74, Florida Statutes, which allow for remittitur of excessive awards. See § 768.73(1)(c), Fla. Stat. (1993) (now found in section 768.73(1)(d), Florida Statutes (1999); providing that section 768.74 applies to review punitive damage awards). The standard of review of remittitur orders is abuse of discretion.
Moreover, it makes little sense to me to treat punitive damage awards that have been statutorily limited to appropriate multiples of the compensatory award the same as unrestricted punitive damage awards that are based solely on the unbridled discretion of the jury and the courts. If this were the case, and Cooper applied equally to restricted and unrestricted awards, there would be no need for statutory restrictions and little incentive for states to enact legislation to place appropriate limits on punitive damage awards. As will be discussed seriatim, Florida has enacted legislation that, with limited exceptions, does place limits based on a multiple of three times the amount of compensatory damages on punitive damage awards and requires increased judicial scrutiny of such damage awards.

The Florida Statutory Provisions Contained In Section 768.73 That Place Restrictions On The Amount Of Punitive Damage Awards
As Justice Breyer noted in his concurring opinion in Gore, Florida has a statutory scheme that places limits on the amount of punitive damage awards. This statute, section 768.73, Florida Statutes, was originally enacted as part of the 1986 Tort Reform Act. It has been amended several times since its original enactment and the only version that could apply to the instant case is section 768.73(1)(a), Florida Statutes (1993), which provides:
In any civil action based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty, and involving willful, wanton, or gross misconduct, the judgment for the total amount of punitive damages awarded to a claimant may not exceed three times the amount of compensatory damages awarded to each person entitled thereto by the trier of fact, except as provided in paragraph (b).
The exception provided in section 768.73(1)(b) allows an award to exceed the statutory limit if the plaintiff can prove by clear and convincing evidence that the award is not excessive in light of the facts and circumstances presented to the jury. *1124 Section 768.73 alleviates the concerns expressed in Cooper and Gore regarding the due process notice requirements. That is so because the passage of the 1986 Tort Reform Act, and specifically section 768.73, put all citizens in Florida, including the Defendant in the instant case, on notice of the provisions of the statute and the fact that wrongdoers may subject themselves, in appropriate cases, to a civil fine of treble damages. The statute also ensures that the punitive damage award is proportional to the amount of harm caused by the wrongdoer by limiting the award to no more than three times the amount of compensatory damages. Thus I conclude that Cooper is not applicable to punitive damage awards that are subject to the statutory cap and, therefore, the abuse of discretion standard is applicable to review those awards. In those exceptional cases where the wrongful conduct is so egregious that the statutory cap does not apply[3] or the particular tort does not fall within one of the categories listed in the statute, Cooper is applicable and the standard of review is de novo. Accordingly, the next issue that must be resolved is whether the punitive damage award in the instant case is subject to the statutory cap to make de novo review pursuant to Cooper inapplicable.
In the instant case, the punitive damage award exceeds three times the amount of compensatory damages. The trial court applied the 1999 version of the statute, specifically section 768.73(1)(c), Florida Statutes (1999), to conclude that the excess award is appropriate. Although the 1999 statute certainly applies to the specific torts committed by the Defendant in the instant case, see section 768.72(2)(a) and(b), Florida Statutes (1999), I need not analyze whether the award falls within the statutory exception because this cause of action accrued in April 1993 rendering the 1999 statute inapplicable. As the court stated in Ballard:
We recognize that the Legislature recently amended section 768.73. See Ch. 99-225, § 23, Laws of Fla. (enacted into law May 26, 1999).... The amendments to the law, however, do not take effect until October 1, 1999. See Ch. 99-225, § 36. Therefore, the recent amendments to section 768.73 do not affect the result we reach in this case.
749 So.2d at 489 (footnote omitted). Thus the 1993 version of section 768.73 is the only version that may possibly apply to the instant case.
When a trial court applies the wrong version of section 768.73, remand is generally required so that the trial court may apply the correct statute. See State Farm Mut. Auto. Ins. Co. v. Penland, 668 So.2d 200, 205 (Fla. 4th DCA 1995). However, the 1993 version of section 768.73 does not apply to the instant case either because, unlike the 1999 statute, it provides that its application is limited to cases based on negligence, strict liability, products liability, misconduct in commercial transactions, professional liability, or breach of warranty,[4] which are categories of torts that do *1125 not encompass assault, battery, and false arrest (the torts the Defendant is found to have committed in the instant case).[5]See Alamo Rent-A-Car, Inc. v. Mancusi, 632 So.2d 1352,1357 (Fla.1994).
Therefore, the statutory limitations that cap the amount of punitive damages that may be recovered at three times the amount of compensatory damages do not apply to the instant case.[6] This essentially means that the punitive damages award rendered to the Plaintiff is based on those unique torts that permit awards in any amount based on the jury's unbridled discretion. Thus I agree that de novo review pursuant to the standard enunciated in Cooper applies to the instant case. But because the trial court did not have the opportunity to apply the Cooper criteria in the proceedings below, it is appropriate for this court to remand this case so it may do so.

Conclusion
I conclude that the punitive damages award is not subject to the statutory cap provisions contained in section 768.73 and, therefore, Cooper does apply to the instant case. However, the record reveals that the constitutional issue was never raised in the trial court and it was not adequately raised and argued in the proceedings before this court. Therefore, I concur that the order under review should be reversed and this case remanded so the trial court may properly consider whether the award is unconstitutionally excessive pursuant to Cooper. Lastly, I conclude that Justice Ginsberg was absolutely correct when she noted in her dissent in Cooper that "[t]he Court's *1126 approach will be challenging to administer." Cooper, 121 S.Ct. at 1693.
NOTES
[1] The compensatory damages awarded were: $1,000.00 medical expenses; $1,500 lost wages; $10,000.00 attorney's fees; and $80,000.00 pain and suffering, mental anguish, etc., in the past, and $10,000 in the future.
[2] See 42 U.S.C. § 1983; 28 U.S.C. § 1343a(4).
[3] Under the doctrine of expressio unius est exclusio alterius, the expression of one thing is the exclusion of the other. See Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla. 2001); Young v. Progressive Southeastern Ins. Co., 753 So.2d 80 (Fla.2000). That is, when a law expressly describes a situation where something should apply, an inference must be drawn that what is not included by specific reference was intended to be omitted or excluded. Prewitt Management Corp. v. Nikolits, 795 So.2d 1001, (Fla. 4th DCA 2001). See also Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So.2d 234 (1944)(listing of three exceptions should be read as excluding those not expressly mentioned).
[4] The acts complained of occurred on April 2, 1993.
[5] See Havoco of America, Ltd. v. Hill, 790 So.2d 1018 (Fla.2001); Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So.2d 234 (1944); Prewitt Management Corp. v. Nikolits, 795 So.2d 1001 (Fla. 4th DCA 2001); Young v. Progressive Southeastern Ins. Co., 753 So.2d 80 (Fla.2000) (expressio unius est exclusio alterius, the expression of one thing is the exclusion of the other).
[6] Pursuant to section 768.71(1), that statute expressly applies to "any action for damages, whether in tort or in contract." As noted above, if the punitive damage award was made based on the civil rights violation, this statute may not be applicable. But that is not a material issue here because the court did not reduce the award pursuant to this statute.
[7] Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001).
[8] See Aircraft Service International Inc. v. Jackson, 768 So.2d 1094 (Fla 3d DCA 1995).
[9] Nello L. Teer Co. v. Hollywood Golf Estates, Inc., 324 F.2d 669 (5th Cir.1963)(Florida); Florida Public Utilities Co. v. Wester, 150 Fla. 378, 7 So.2d 788 (1942). Floridians also have substantive rights to be free from excess punishment under article I, section 17, Florida Constitution. Preston v. City of Ft. Pierce, 637 So.2d 326, 329 (Fla. 4th DCA 1994). Generally, a verdict for punitive damages is excessive where the award bears no relation to the amount the defendant is able to pay, or where the tort committed is lacking the degree of maliciousness to sustain the amount of the verdict. Owens-Corning Fiberglas Corporation v. Ballard, 739 So.2d 603 (Fla. 4th DCA 1998), approved, 749 So.2d 483, 485 (Fla. 1999).
[10] See In re the Exxon Valdez, 270 F.3d 1215, (9th Cir. 2001).
[11] See, e.g., Acceptance Ins. Co. v. Brown, ___ So.2d ___, 2001 WL 729283 (Ala. June 29, 2001); Lockley v. Turner, 344 N.J.Super. 1, 779 A.2d 1092 (2001). An appellate court must apply the law that exists at the time of the appeal. Lowe v. Price, 437 So.2d 142 (Fla. 1983); Hendeles v. Sanford Auto. Auction, Inc., 364 So.2d 467 (Fla.1978); Fla. East Coast Railway Co. v. Rouse, 194 So.2d 260, 262 (Fla.1966).
[1] Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001)
[2] The Ninth Circuit Court of Appeals in In re Exxon Valdez, 270 F.3d 1215 (9th Cir.2001), as does the majority herein, remanded to the trial court to determine the issue of excessiveness under the new standard established by the United States Supreme Court. But clearly the trial court in Cooper did not have the benefit of the United States Supreme Court decision therein when it upheld the punitive damage award. But the Supreme Court, after reversal, remanded the case back to the Ninth Circuit Court of Appeal "for further proceedings consistent with this opinion." That suggests that the Supreme Court, which held in Cooper that the "broad legal comparison" required in determining the validity of a punitive damage award was more suited to the expertise of the appellate court, intends that the appellate court, and not the trial court, will make this analysis. It appears that whatever the trial court decides after remand, our obligation on review will not change.
[3] Is the United States Supreme Court suggesting that a concept of "comparable fairness" based on equal protection and due process is imposed on the states by the 14th Amendment?
[4] We are to dispassionately consider the relationship of the punitive damage award to the harm caused the victim, not the relationship between the punitive damage award and the award for compensatory damages as determined by the jury. It is, after all, the jury's passion that we are reviewing.
[1] In Gore, the jury awarded $4,000 in compensatory damages and $4,000,000 in punitive damages, which was later reduced by the Alabama Supreme Court to $2,000,000. The Court in Gore was called upon to consider the constitutionality of a punitive damage award that was 500 times the amount of compensatory damages rendered under a state law that placed no restrictions on the amount of punitive damages that could be recovered. The Court held that such unbridled discretion and the grossly disproportionate punitive damage award rendered the amount unconstitutional.
[2] In my view, the second factor specifically refers to the relationship between the amount of compensatory and punitive damages which is a necessary element that the appellate courts must consider. I am not alone in this belief. See Davis v. Rennie, 264 F.3d 86, 116 (1st Cir.2001) (holding that the second Cooper criteriathe disparity between the suffered and the punitive damages awardwas satisfied because "the punitive damages award was reasonable in comparison to the compensatory damages award."); Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70 (1st Cir. 2001). As the court stated in Zimmerman:

The second BMW guidepostthe ratio between compensatory and punitive damages points in the same direction. The Supreme Court has held that a 4:1 compensatory-to-punitive ratio does not "cross the line into the area of constitutional impropriety." Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 24, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991). Accordingly, the 2:1 ratio of compensatory to punitive damages awarded by the jury here presents no cause for concern.
Id. at 82 (footnote omitted) (emphasis supplied).
[3] In Owens-Corning Fiberglas Corp. v. Ballard, 749 So.2d 483 (Fla.1999), for example, the court found that the defendant's conduct was more egregious than the standard of wanton and willful disregard for the safety of the plaintiff. Thus the court held that the trial court did not abuse its discretion in denying a motion for remittitur and affirmed a punitive damage award in the amount of $31 million, which was almost eighteen times the amount of compensatory damages that were awarded.
[4] § 768.73(1)(a), Fla. Stat. (1993). The 1993 version of section 768.73 also differs from the 1999 version because the former provides that the plaintiff must demonstrate to the court by clear and convincing evidence that an award that exceeds the statutory cap is not excessive in light of the facts and circumstances which were presented to the trier of fact whereas the 1999 version provides that the cap may be exceeded if the jury finds that the defendant intended to harm the plaintiff and the wrongful conduct did in fact harm him.
[5] Negligence is the only category listed in section 768.73(1)(a), Florida Statutes (1993), into which assault, battery, and false arrest might possibly fit. But the case law is clear that they are unique species of tort that are not based on negligence principles. Assault and battery are intentional torts as opposed to torts based on negligence. City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3d DCA 1996) ("As noted in McDonald v. Ford, 223 So.2d 553 (Fla. 2d DCA 1969), `An assault and battery is not negligence for such action is intentional, while negligence connotes an unintentional act'"); Slawson v. Fast Food Enters., 671 So.2d 255, 258 (Fla. 4th DCA 1996) ("[T]he kind of harm sought to be avoided was an intentional assault, the oldest intentional tort."). Similarly, false arrest, which is indistinguishable from false imprisonment, is an intentional tort that is not based on negligence. See Pokorny v. First Fed. Sav. & Loan Ass'n of Largo, 382 So.2d 678 (Fla.1980); Hill v. Hill, 388 So.2d 625, 626 (Fla. 1st DCA 1980) ("Here the tort allegedly committed by the husband against the wife, malicious prosecution or false imprisonment, is an intentional tort unlike negligence.").
[6] I believe that section 768.73 is applicable to § 1983 actions brought in Florida courts. The issue is one of preemption. If a § 1983 action is brought in state court, any substantive state law that interferes with or is contrary to federal law must yield. Felder v. Casey, 487 U.S. 131, 138, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); see also Moran v. City of Lakeland, 694 So.2d 886, 886 (Fla. 2d DCA 1997) (holding that "a federal law preempts a state law where the two conflict") (citing Felder); Hernandez, v. Coopervision, Inc., 691 So.2d 639, 641 (Fla. 2d DCA 1997) ("Thus, if it is possible to comply with both federal and state law, there is neither a conflict nor a frustrated purpose.") (citation omitted). Section 1983 is a very broadly worded statute that says nothing about punitive damages. The federal courts have broadly interpreted § 1983 to allow recovery of punitive damages. In my view, section 768.73 is fully consistent with the Court's decision in Haslip and does not conflict with any federal law. See Blinn v. Florida Dep't of Transp., 781 So.2d 1103 (Fla. 1st DCA 2000); WRH Mortgage, Inc. v. Butler, 684 So.2d 325 (Fla. 5th DCA 1996). Thus I believe that section 768.73 is generally applicable to § 1983 actions brought in Florida courts.